418 A.2d 472

Harry STRAUB

v.

Barbara H. TYAHLA, Appellant.

Superior Court of Pennsylvania.

Argued June 20, 1979.

Filed Jan. 18, 1980.

Jack A. Rounick, Norristown, for appellant.

Anthony J. Scirica, Norristown, for appellee.

Before HESTER, HOFFMAN and CATANIA,* JJ.

HESTER, Judge:

Before the court is appellant–non–custodial mother's appeal from an order of the lower court dated September 19, 1978, requiring appellant to pay the sum of $35 per week towards the support of her two minor children.

We reverse.

▉ Initially, it is appropriate to observe that the trial court possesses wide discretion as to the proper amount of support payments and, unless surrounding circumstances suggest the court abused its discretion, its judgment will not be disturbed. *Commonwealth ex rel. Berry v. Berry*, 253 Pa.Super. 268, 384 A.2d 1337 (1978); *Weiser v. Weiser*, 238

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

Pa.Super. 488, 362 A.2d 287 (1976); *Commonwealth ex rel. Caplan v. Caplan*, 236 Pa.Super. 605, 346 A.2d 822 (1975).

Our scope of review is limited to a determination as to whether the order of support can be sustained on any valid ground. *Marvin v. Marvin*, 193 Pa.Super. 179, 164 A.2d 128 (1960). We must determine whether there was sufficient evidence to sustain the lower court or contrariwise whether the lower court was guilty of an abuse of discretion. A finding of abuse of discretion is not lightly made; but only upon a showing of clear and convincing evidence. *Com. ex rel. McQuiddy v. McQuiddy*, 238 Pa.Super. 390, 358 A.2d 102 (1976); *Com. ex rel. Caplan v. Caplan*, 236 Pa.Super. 605, 346 A.2d 822 (1975); *Com. ex rel. Halderman v. Halderman*, 230 Pa.Super. 125, 326 A.2d 908 (1974).

In reviewing the lower court's action to determine whether an abuse of discretion has occurred, we recognize that "[a]n abuse of discretion is merely an error of judgment, but if in reaching a conclusion the law is overriden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill–will, as shown by the evidence or the record, discretion is abused." *Com. ex rel. Levy v. Levy*, 240 Pa.Super. 168, 174, 361 A.2d 781, 785 (1976).

In evaluating a spouse's support obligation, the factors to be considered are the spouse's income, potential earning power, and the extent of his property and financial resources. *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977); *Shuster v. Shuster*, 226 Pa.Super. 542, 323 A.2d 760 (1974). The amount of the award must be fair, non–confiscatory, and attendant to the circumstances of the parties. *Commonwealth ex rel. Malizia v. Malizia*, 229 Pa.Super. 108, 324 A.2d 386 (1974); *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 310 A.2d 672 (1973).

The salient facts of the instant matter can be summarized as follows:

Appellant–mother and appellee–father are the divorced parents of two minor children, Donald and Harry. Since August of 1976 when the parties separated, the minor children have resided with their father pursuant to the terms of a Separation Agreement that the father have custody of the children. Appellee–father is unmarried; appellant–mother is remarried.

Appellant worked as a claims adjuster beginning in August of 1976 with Prudential Insurance Company where she earned a net weekly income of approximately $150 which she continued to earn until resigning her position in June of 1978. Since that time, she has remained unemployed.

Appellee–father has been employed with the General Electric Company as an engineer earning $30,800 per year. His weekly earnings after taxes are approximately $427. In addition to his current earnings, appellee maintained a total savings package of approximately $25,000.00 as well as substantial equity in his now individually owned residence.

Appellant's present husband is also employed by the General Electric Company with gross weekly earnings of $494 and net disposable weekly income of $260. The disparity between gross and net was not fully explained other than noting a $49 savings account deduction.

Attributing 50% of total allowable expenses (excluding those items specifically attributable to the appellee alone), the court found that the needs of the two minor boys to be not less than $212 per week.

The lower court found that due to appellant's prior work experience, her net earning capacity is not less than $150 per week. The court further found that her day to day living expenses are paid for entirely by her present husband. Giving that the needs of the two minor boys are not less than $212 per week, the lower court concluded that the appellant has the earning capacity (although not presently the earnings) to contribute $35 per week towards the support of her two children, a sum less than 17% of their needs.

■ We reaffirm and restate the law of the Commonwealth as set forth in the landmark case of *Conway v. Dana*, 456 Pa. 536, 539, 318 A.2d 324, 326 (1974):

> We can best provide for the support of minors by avoiding artificial division of the panoply of parental responsibilities and looking to the capacity of the parties involved. Support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. Both must be required to discharge the obligation in accordance with their capacity and ability. Thus, when we consider the order to be assessed against the father, we must not only consider his property, income and earning capacity but also what, if any, contribution the mother is in a position to provide.

The *Conway* decision, as supplemented by *White v. White*, 226 Pa.S. 499, 313 A.2d 776 (1973), now requires the hearing court to consider the earning capacities of both spouses where such capacities may be reasonably determined to exist.

Additionally, the Pennsylvania Equal Rights Amendment (E.R.A.), which appears at Article I, Section 28, has been interpreted to place the parties (father and mother) in a position of parity with respect to the allocation of financial burdens in support cases.

Notwithstanding the above, a very careful review of the record in the case at bar leads us to conclude that the lower court order of $35 per week towards the support of appellant's two minor children was, in fact, confiscatory. Appellant's only present income is $162.79 *per month*. An order of support of $35 *per week* or approximately $150 per month,[1] appears to us to be unreasonable under the facts at bar.

In *Commonwealth ex rel. Goodman v. Delara*, 219 Pa.Super. 449, 453, 281 A.2d 751 (1971), the court stated:

> "It is well established in Pennsylvania that any order for support must be fair and not confiscatory. The purpose of

1. $35 × 4⅓ weeks per month = $151.55.

such an order is the maintenance and welfare of the children, not the punishment of the parent, and the amount of the order must be justified by the parent's present earning ability, making due allowance for his own reasonable living expenses."

Appellant testified that she is presently unemployed and not seeking employment because of severe emotional and psychological problems. Appellant claims that the onset of her debilitating emotional problems coincided with the initiation of her visitation proceedings. She claims that she occupies her waking hours by sitting in her apartment; that she avoids social events and other social activities in which she formerly participated.

In support of her contention that she is presently unable to work, her attending psychiatrist, Dr. Arthur David Boxer, who had seen her on four separate occasions, testified that appellant suffers from depressive neurosis rendering her incapable of working.

Appellant called Dr. Boxer as an expert witness. Prior to his testifying, counsel for appellee stipulated that Dr. Boxer is a well known psychiatrist and "clearly one of the many experts in that area." (R. 114(a))

On direct examination, Dr. Boxer testified:

Q. As a result of what you have learned, have you been able to form an opinion as to her ability to work at this time?

A. Yes, sir.

Q. What is that opinion?

A. That under no circumstances can Mrs. Tyahla work at this time. (R. 117(a))

On cross examination:

Q. What is your diagnosis, Doctor?

A. Depressive neurosis. (R. 117(a))

Continuing on cross:

Q. In which way are you treating her, Doctor?

A. Psychotherapy.

Q.  What is your prognosis?

A.  Fair to good (R. 119(a))

Again, continuing:

Q.  If I suggested to you that she mostly just sits at home and does nothing, she does not watch television to speak of, does not read, does not talk to friends, does not contact people, does not play bridge, would you say that's a pretty good way for her to spend the day?

A.  I think it was a symptom of her depressive state and is at the moment.

In answer to your question, no, it's not a good way to spend a day, but I don't think she has any recourse at this time.  (R. 121(a))

Q.  ".   .   .  wouldn't you say that she'd be better off at a job that she enjoyed, as she testified earlier today where she enjoyed her job, rather than sitting around the house doing nothing?

A.  In my professional opinion at this time she is incapable of doing that.  She's in a state of antidonia. Antidonia is a technical term, and it means without pleasure, and that's a symptom of her state at this time.

Q.  If an effort were made for her to go out to work and get pleasure, would that ease her situation overall?

A.  I don't believe she's capable.  (R. 122)

And, finally:

Q.  Do you think contributing to the support of her children would support her self–esteem and the purposefulness would be beneficial to her?

A.  I don't think she's to the level of being able to appreciate any self–esteem at the moment.  (R. 123)

Summarizing on re–examination:

A.  I would say Mrs. Tyahla is at that level of depression rendering her withdrawn and unable to function in a capacity which would call for a certain level of intellectual endeavor to perform a task.

I would guess that the necessary work of her occupation requires a certain amount of mental acuity which, due to her depression, is unavailable to her at this time.

Appellant offered no expert testimony in rebuttal. (R. 130(a))

Despite all of the above, the lower court found the testifying psychiatrist's conclusion that appellant was unable to work to be unpersuasive.

■ We are fully cognizant of the law that as the trier of fact, the lower court was not *obligated* to accept the conclusion of the testifying psychiatrist. *Ray v. City of Philadelphia*, 344 Pa. 439, 25 A.2d 145 (1942).

■ However, in the case at bar, we conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist. Our careful review of the record convinces us that *at the time of the hearing* appellant was, in fact, *unable* to work due to her mental infirmity. Since appellant was unable to work, reliance upon her "earning capacity" by the lower court was misplaced. Since appellant was, in fact, unable to work due to a mental infirmity, the lower court's entry of an order of support of $35 per week was unreasonable, an abuse of discretion and confiscatory.

Order reversed.