**K.W.B., Appellant,**

v.

**E.A.B.**

Superior Court of Pennsylvania.

Submitted May 27, 1997.

Filed July 28, 1997.

---

James L. Liberto, New Kensington, for appellant.

Cassandra M. Neely, Clarion, for appellee.

Before BECK, TAMILIA and OLSZEWSKI, JJ.

TAMILIA, Judge.

Appellant/father presents this appeal from the September 4, 1996 Order awarding primary physical custody of the parties' children to appellee/mother.

The parties to this action were married in 1982 and had two children, K.M.B., born on April 1, 1983, and J.E.B., born on October 31, 1986. The parties separated in 1989 and the children remained with appellee, who remarried in 1991. Also in 1991, appellee, with her new husband and the children, returned to Butler County, the parties' pre-separation county of residence. Appellant relocated to Venango County. From 1991 to 1995, the children attended school in the Butler School District. During this period, K.M.B. was diagnosed with attention deficit disorder. On March 6, 1995, appellant filed, in Butler County, a petition for modification in which he requested primary physical custody of the children. Pursuant to the petition, the court ordered a custody evaluation, which was conducted by Andrew Koffman, Ph.D., through the Irene Stacy Clinic in Butler. Following his evaluations of the parties, their new spouses and the children, Dr. Koffman filed an extensive report in which he made the following significant conclusions:

> This evaluator agrees with the position of [appellant and his wife] which is that they can provide a more stable environment for the children than can [appellee and her husband]. Certainly there is less interpersonal pathology in [appellant's] household than is apparent in [appellee's] household, and it appears that [appellant and his wife] have been more supportive of the children's relationship with their mother than the other way around.

> . . .

> At least to some extent, the blame for the children's interpersonal difficulties must be assigned to the rather toxic relationships within [appellee's] household. [Appellant's] family appeared to function more effectively than did [appellee's] family when each was observed by the evaluator. All of these concerns weigh in favor of a transfer of custody from [appellee] to [appellant].

(R.R. at 268–269, Exhibit filed 2/14/96.) Based upon these conclusions, Dr. Koffman recommended that "primary physical custody might be transferred from [appellee] to [appellant] for a period of a year, during which time it will be possible for everyone to assess the effect that this has on the children." (R.R. at 269.)

In November of 1995, appellee, with her new husband and the children, relocated to Clarion County and the children were enrolled in the Union School District. On April 9, 1996, following the submission of Dr. Koffman's report, a custody mediation was held in Butler County. Essentially endorsing Dr. Koffman's conclusions, the mediator recommended that the parties share physical custody through the summer of 1996 and that father be awarded primary physical custody for the 1996–97 school year. The Butler County Court of Common Pleas approved this recommendation by Order dated April 18, 1996. The Order also transferred jurisdiction of the case to Clarion County, as neither party resided in Butler County at the time it was entered.

On July 15, 1996, appellee filed exceptions to the Order in Clarion County. She also filed a petition for special relief in which she agreed to the custody transfer of J.E.B. to appellant, on the basis that this was consistent with J.E.B.'s wishes. However, appellee requested an emergency hearing on the issue of whether K.M.B. should stay with her. In support of this request, appellee averred that K.M.B. did not want to live with appellant and that the Union School District was addressing K.M.B.'s special educational needs. Hearings were held on appellee's exceptions on August 26 and August 30, 1996. K.M.B., the first witness to testify at the hearing, stated that he wished to remain with appellee (N.T., 8/26/96, p. 12). The next witness, J.E.B., expressed a preference to live with appellant (N.T. at 41). Dr. Koffman also testified at length concerning his evaluations of the parties, their spouses and the children. He reiterated his recommendation to the Butler County Common Pleas Court "that the children be transferred from the custody of [appellee] to [appellant] for a period of a year." (N.T., 8/30/96, p. 17.) Dr. Koffman,

who was the only expert to testify, supported this recommendation on the following basis:

My strong view is that [appellant and his wife] are better situated to provide these children a stable interpersonal environment than are [appellee and her husband]. It is my view that since [appellee] has been the parent who has had primary physical custody of these children all along, it is therefore primarily her responsibility to ensure that the children in her charge receive appropriate and adequate treatment; that they be in a stable environment and all those kinds of things we hope for children who need mental health assistance. It's my view that she has not been able to provide that and is not well situated to provide it, largely in view of the rather significant interpersonal pathology in the home.

It's my view that while [appellant and his wife] also have their difficulties and are not without some emotional and/or interpersonal difficulties, that there is a huge difference between the two households in that regard. And it is my view that these children need a more stable, healthy environment that they have been given up to now.

(N.T. at 18–19.) Dr. Koffman further stated that his recommendation was based upon "the degree to which [appellee's husband] had an unusually negative relationship with the children [and] his ineffectiveness and his really toxicity in interacting with the children." (N.T. at 42.) Finally, Dr. Koffman noted that appellee and her husband "spent a fair bit of time trashing father, making negative statements, one after the other about father, and encouraging the children to make similar statements. That did not occur during [appellant's] family session. This was most unusual." Id.

The next witness was the superintendent of the Union School District, where the children resided with appellee, who testified that the district had implemented a state program to deal with K.M.B.'s special education needs (N.T. at 50). The final witness to testify was the superintendent of the Valley Grove School District, where appellant lives, who testified that the same program afforded

K.M.B. in the Union School District would be available at Valley Grove (N.T. at 68).

By Order dated September 4, 1996, the trial court rejected the prior Butler County Order and the uncontradicted testimony of Dr. Koffman and directed that primary physical custody of both children remain with appellee. Appellant filed a timely appeal and by Order dated September 27, 1996, the court directed appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925. This statement was filed by appellant on October 11, 1996. Thereafter, the trial court failed to file an Opinion. By Order dated January 23, 1997, this Court directed that the trial court file a supplemental Opinion supporting his custody Order within 45 days. On January 30, 1997, the trial court filed an Order in which it stated that an Opinion attached to the Order of September 4, 1996 "is the final Opinion issued in this case and the undersigned wishes to enter no further Opinion at this time." (Order, 1/30/97.) In the Opinion referred to by the trial court, which spans less than two full pages, the court's rationale consists in its entirety of the following "findings of fact":

1. [K.M.B.] was subject to punching and physical intimidation in the Butler School District.

2. Both [K.M.B.] and [J.E.B.] are well oriented and happy in the Union School District.

3. [K.M.B.] is suffering from certain learning disabilities which are being effectively addressed in the Union School District and by continuing counseling.

4. Both [K.M.B.] and [J.E.B.] are happy in their new home in rural Clarion County and are enjoying their animal pets.

5. The basic problem is with the parents in that they have continued (directly and indirectly) to embroil the Children in their past and present domestic differences. They have violated the common sense cardinal rule that neither parent nor members of their respective households should ever utter derogatory remarks or demeaning statements about the other parent to, or in the presence of, their children.

6. The allegations of physical abuse by Step–Father, [H.A.B.], Jr., against [K.M.B.] are unfounded. Such allegations resulted, at least in part, from [J.E.B.'s] desire for her share of attention.

7. [K.M.B.] is adamant that he does not want to live with his Father.

8. In spite of the fact that Mother's Petition suggested that the court permit [J.E.B.] to live with her Father, we find that the Children should remain together.

9. In summary, we find that it is in the best interest and welfare of the Children that Mother retains primary physical custody of the Children, both parents are to share legal custody, with liberal visitation privileges to Father.

(Slip Op., Greiner, J., 9/4/96, pp. 2–3.) As these findings indicate, the court's brief Opinion of September 4, 1996 makes no reference to the basis upon which the court discounted Dr. Koffman's uncontradicted expert testimony that appellant would provide "a more stable, healthy environment" for the children. Nor does the Opinion explain why the court felt compelled to effectively reverse the April 18, 1996 Butler County Order transferring custody from appellee to appellant.

A panel of our Court has recently reiterated that:

[I]n a custody matter, the trial court must file a comprehensive opinion containing its findings and conclusions regarding all pertinent facts. Effective appellate review requires a complete and comprehensive opinion containing an exhaustive analysis of the record and specific reasons for the court's ultimate decision. When no such opinion is forthcoming, we must remand to the trial court.

*Alfred v. Braxton,* 442 Pa.Super. 381, 386, 659 A.2d 1040, 1042 (1995) (citations omitted).

■ However, in light of the trial court's statement, in response to our Order of January 23, 1997, that it "wishes to enter no further Opinion", we decline to now remand for a more comprehensive Opinion. Instead, we have conducted our own thorough review of the record and find that the trial court erred in disregarding the uncontradicted ex-

pert testimony of Dr. Koffman that the children's best interests would be served by an award of custody to appellant. In addition, we question whether procedurally it was correct to transfer this case to Clarion County to consider objections to an Order entered in Butler County and to have a review within three months of that Order by a judge totally new to the case who ignored the previous findings as well as the psychological evidence concerning the family dynamics. Under Actions for Custody, Partial Custody and Visitation of Minor Children, Pa.R.C.P.1915.2, Venue, the case should have remained in Butler County for the hearing on exceptions to the Butler County Order, despite the transfer to Clarion County of the Butler County Order. Nothing is more detrimental to an effective resolution of custody matters than constant revisitation by different judges in different jurisdictions, particularly when the custody Order had not yet been implemented.

■ The standard of review in custody cases is well-recognized:

[O]ur law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type. . . . Thus, an appellate court is not bound by deductions or inferences made by a trial court from the facts found; . . . nor must a reviewing court accept a finding which has no competent evidence to support it[.]

*Com. ex rel. Robinson v. Robinson,* 505 Pa. 226, 236, 478 A.2d 800, 806 (1984), citing *Com. ex rel. Spriggs v. Carson,* 470 Pa. 290, 295–96, 368 A.2d 635, 637 (1977). Although this broad power of review does not permit us to nullify the trial court's function as a fact-finder, we must exercise "our own independent deductions and inferences from the facts as found by the hearing judge." *Robinson, supra.*

What is unusual in this case is that a second trial judge hearing some (but apparently not all) of the evidence heard by another trial judge reversed the Order of the first trial judge with no new or significant evidence of change in circumstances, all within three or four months of the earlier decision. In effect, Judge Greiner acted in the role of an appellate court in reversing the Order, when no basis for special relief existed pursuant to Pa.R.C.P.1915.13, Special Relief.

■ Applying the above standards and observations to the instant case, we note initially that the trial court's ninth "finding of fact" regarding the best interests of the children, is in reality a conclusion of law. We reject this conclusion as completely unsupported by the record. As noted, the neutral, court-appointed expert witness testified clearly and unequivocally to his "strong view" that custody should be awarded to appellant (N.T. at 18). While the trial court was not obligated to delegate its decision-making responsibility to the expert, the court was required to give due consideration to his testimony. See e.g., *Rinehimer v. Rinehimer,* 336 Pa.Super. 446, 452–54, 485 A.2d 1166, 1169 (1984) (While it need not accept their conclusions, "[t]he lower court was obligated to consider the testimony of the two experts[.]"). Here, the trial court improperly and completely disregarded the testimony of Dr. Koffman. See *Straub v. Tyahla,* 274 Pa.Super. 411, 418–19, 418 A.2d 472, 476 (1980) ("[W]e conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist."). Combined with our thorough review indicating that Dr. Koffman's conclusion was correct, particularly as it detailed the psychological vulnerability of step-father and his intolerance of the children and the concomitant fragile emotional state of K.M.B., predictive of far more serious problems for the children in the future under the mother's care, the trial court's complete failure to consider his testimony mandates reversal. *Straub, supra.*[1]

Based on the foregoing, we reverse the September 4, 1996 Order granting primary physical custody of the parties' children to

---

1. Appellant also claims the record is insufficient to justify the custody Order and that the trial court erred in "conceding to K.M.B.'s preference to remain with his mother." (Appellant's brief at 20.) However, due to our determination that the best interests of the children are served by an award of custody to appellant, we need not consider these claims.

appellee and award primary physical custody to appellant father.

Order reversed; Order of April 17, 1996, O'Brien, J., reinstated; primary physical custody of the children to be transferred to the father two weeks prior to commencement of the 1997–98 school year.

Jurisdiction relinquished.

BECK, J., concurs in the result.