J-A26013-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| M.K. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.K. | : | No. 310 WDA 2019 |

Appeal from the Order Entered January 16, 2019
In the Court of Common Pleas of Butler County Civil Division at No(s):
F.C. No. 15-90021-C

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY SHOGAN, J.:                   FILED JANUARY 28, 2020

M.K. ("Father") appeals from the order entered on January 16, 2019, that awarded Father and C.K. ("Mother") shared legal custody, Mother primary physical custody, and Father partial physical custody of their minor sons, M.K., born in August of 2007, and C.K., born in November of 2011 (collectively "Children").  We affirm.

The trial court set forth the background of this case as follows:

> Mother and Father married [i]n August [of] 2005.  They separated on January 15, 2015.  The [trial court] issued a Custody Consent Order on September 12, 2016, whereby Mother exercised primary physical custody and Father exercised partial physical custody.  However, on January 22, 2018, Father filed a Petition to Modify Custody.  Father sought equally shared physical and legal custody.  Mother asserted a counter[-]claim seeking primary legal and physical custody.

Trial Court Opinion, 6/5/19, at 1.

The trial court held a custody trial on October 15, 2018, October 16, 2018, and October 23, 2018. At the hearing on October 15, 2018, Father presented the testimony of K.A.B., M.K.'s fourth grade teacher. He next presented the testimony of K.W., who is the principal at the Children's school. Father then testified on his own behalf. Father also presented the testimony of D.McC., who works in the evenings in the Cranberry Township Municipal Building and has observed some of the custody exchanges of Children between the parents in this case. Finally, Father presented the testimony of M.K., ("Maternal Aunt"), Mother's younger half-sister, regarding her relationship with Children and Mother and Father, and Maternal Step-Grandmother's and Maternal Grandfather's abuse of drugs and/or alcohol.

At the hearing on October 16, 2018, Mother testified on her own behalf and presented the testimony of A.G., her boyfriend. Father presented the testimony of B.H., Mother's stepmother. Next, Father presented the testimony of Alicia Weismantle, Ph.D., Father's treating psychologist. The trial court conducted interviews of Children, separately and in camera, with all counsel present. Father then presented the testimony of D.M., his friend for thirty years.

On October 23, 2018, Mother presented the testimony of Bruce Chambers, Ph.D., a stipulated expert in child psychology in the context of custody evaluations, who conducts evaluations consistent with the American Psychological Association. N.T., 10/23/18, at 7. Dr. Chambers met with

Mother on May 9, 2018, and June 12, 2018, and met with Father on June 9, 2018, and July 11, 2018. Id. at 9. He conducted an observation of Mother interacting with Children on July 30, 2018, and Father interacting with Children on July 31, 2018. Id. Father then presented the testimony of Eric Bernstein, Ph.D., a stipulated expert in child psychology, regarding his critique of Dr. Chambers's evaluation of the family. Finally, Father testified on his own behalf to rebut the testimony of Mother.

Based on the testimony of the witnesses and the documentary evidence, the trial court found the following facts:

> M.K. suffers from behavior problems inside and outside of school. M.K. has had an individualized education plan since he was in second grade. Both Mother and Father participate in M.K.'s educational needs. M.K. had three significant behavioral incidents in fourth grade. First, M.K. pulled up a picture of a naked woman on the school computer and showed it to other students. Second, M.K. held a pair of scissors to another child's neck in school. Third, M.K. made a comment about self-harm to a teacher. Both Mother and Father were notified of these behaviors[,] and both attended school meetings either by phone or in person regarding these problems. Teachers believe Children would do better in school with consistency and stability in their lives.

> In March 2015, Mother obtained a Protection [F]rom Abuse ["PFA"] Order against Father. The [PFA] Order was withdrawn by Mother after six months. Father avers that he has never used drugs and does not have an alcohol problem, but [he] submitted to a drug and alcohol evaluation at Mother's request following the [PFA] hearing. Father was recommended [to attend,] and he completed[,] intensive outpatient treatment[,] after being evaluated at Gateway. Father never provided the results of the evaluation to anyone other than his lawyer. Father minimizes his alcohol issues[,] despite the fact that Gateway recommended[,] and he completed[,] intensive outpatient treatment. Father also completed an anger management class and began individual

counseling in January 2015. Father lacks insight [into] his alcohol issue.

Father works as a financial advisor in Washington County, which requires him to work weekend hours, travel out of state, and work a different schedule every week. According to their 2016 Custody Agreement, Mother has right of first refusal of custodial time during Father's custodial periods.

Both [C]hildren participate in extra-curricular activities. M.K. plays ice hockey[,] and C.K. plays hockey and soccer at the YMCA. Father does not think C.K. should be [involved] in so many sports[,] and believes M.K. is burned out by his hockey schedule. Father was responsible for signing Children up for sports in the past, but now Mother does [it]. Mother does not allow her family to attend Children's sports events. Both Children had a relationship with Maternal Grandparents since birth, but Mother has voiced concerns for the Children with her family since before the end of Mother and Father's marriage. Father is willing to facilitate a relationship with Mother's extended family. In Mother and Father's 2016 Custody Agreement, Father agreed not to "undermine Mother's wishes when it comes to her family" (Consent Order 9/12/16, ¶ 5). Father says that he interprets that differently and continues to arrange [for] Children to visit with Maternal Grandparents. Father planned a vacation with Maternal Grandparents and Children without discussing [it] with Mother.

Father interacts with Children through sports, outings, games, etc. M.K.'s behavior at school has worsened. M.K. attended counseling from November 2017 to February 2018. Mother stopped counseling and notified Father on Our Family Wizard ["OFW"]. Father did not agree to stop counseling. M.K. was prescribed Prozac by his family practitioner for depression, but[,] after about five months of taking it[,] M.K. made a comment about self-harm[,] and Mother told Father she was going to wean him off of it due to the side-effects. Father did not agree with this but stopped giving the medication to M.K. at Mother's discretion. M.K. treated with a psychiatrist in the past, but Mother wanted to find a different one. Mother did not agree to any of Father's suggested therapists. Mother and Father attended co-parenting counseling at Cranberry Psychological around 2016, but did not think it was a good fit after ten sessions. The co-parenting counselor suggested that Father not take [C]hildren to see Mother's family.

Father stated that he does not talk to Children about Mother, but the [t]rial [c]ourt did not find him credible. Father believes Mother is undermining his parenting. Father is inconsistent on what custodial time he can abide by. Yet, Father acknowledges that a lack of consistency is causing M.K.'s behavior issues, but asserts that Children need more time with Father. Father claimed that Mother does not properly supervise Children and that Children fear Mother, asserting that Children seemed tense upon return from Mother's [custody,] and Children are more relaxed with him. The [t]rial [c]ourt found Father to lack credibility.

Mother had to set limits with [Maternal Step-Grandmother] and [Maternal Grandfather] due to their behaviors in front of Children, noting that they are argumentative and hostile. Father also brought these behaviors to Mother's attention that he observed throughout the marriage. However, Father relied on [Maternal Step-Grandmother's] testimony at trial. Mother's step-mother never watched Children together. Maternal [S]tep-[G]randmother watched M.K. in 2008 for a couple of days a week. She watched C.K. in 2012 for a couple of days a week for roughly two months. Maternal [S]tep-[G]randmother told Mother that she abused prescription drugs and stole drugs from the pharmacy where she worked. However, Maternal [S]tep-[G]randmother claims that the only time she took opiates was after foot surgery, and asserted she had no addiction. Maternal [S]tep-[G]randmother was diagnosed with depression and lupus[,] which led to her retirement. Maternal [S]tep-[G]randmother testified that [she] believed Mother's accusations are an "evil plan" to get at Father. Moreover, during the marriage, Maternal Aunt saw [Children] regularly and participated in family events. Maternal Aunt has not spoken to Mother in four years[,] [t]hough, she saw Children[,] through Father[,] at family functions.

Mother works as an outpatient therapist and is a licensed clinical social worker. Mother has worked consistently every Tuesday and Thursday from 8:00 a.m. to 9:00 p.m. for the past ten years.[1] Mother claims that she had previously requested Father help her with custody during her custodial time[,] [b]ut,

_____

1 Mother is an independent contractor, and her hours can vary depending upon her schedule, Children's activities and needs, and the needs of her clients. N.T., 10/16/18, at 4-5, 132.

- 5 -

Father would deny her requests.  Moreover, Father did not allow Mother to have custody time on Mother's birthday.

Mother believed that Father's public persona was different from his private persona[,] which led her to file for the [PFA] order in March 2015.  The [t]rial [c]ourt found that Mother was combative in answering questions with both her attorney and opposing counsel.  Mother did not testify to any positive attributes about Father.

Mother believed Father's demeanor towards her was hostile at custody exchanges.  Mother opined that the increased time with Father was causing M.K.'s increased behavior problems.  Mother has previously been treated for depression and anxiety.

The court found Mother's boyfriend to be very credible. Mother's boyfriend had attended custody exchanges and agreed that Father engages in inappropriate commentary to get a rise out of him.  Mother's boyfriend recalls multiple instances in which Father approached him with inappropriate statements. Father called Mother's boyfriend a "dirtball" and asked at an exchange who Mother's boyfriend's lawyer was and why boyfriend was at the exchange.  Further, Father walked up to Mother's boyfriend, laughed at him[,] and commented on his personal hygiene. Mother's boyfriend testified that he never initiated contact with Father and never called him names in front of Children.

Dr. Bruce Chambers conducted custody evaluations pursuant to APA [American Psychological Association] guidelines and issued a report dated August 18, 2018.  He described that [M.K.] suffers significant emotional challenges and [C.K.] has some emotional challenges.  With those in mind, Dr. Chambers considered how those challenges could best be managed through the custodial time of each parent.  To compound the challenges, both parents have significant personality issues which impact their parenting.  Specifically, he described a "pattern of interaction" which makes it difficult for the parties to co-parent[,] [t]hough, he explained that co-parenting is especially important for children with special behavioral needs.

Dr. Chambers cited several red flags.  First, he noted how[,] despite Mother and Father's numerous chronic complaints of the other, [t]hey chose to remain married and have children[,] with the assistance of fertility specialists.  He opined this demonstrated

co-dependency and poor judgement [sic]. He explained that they are "strongly challenged to communicate". Secondly, he discussed Father's lack of insight as to prior alcohol issues. He noted that Father denies any alcohol dependency and Father stated, "you can't run a marathon and be an alcoholic," implying he is not [an alcoholic]. The [trial court] notes that this was consistent with Father's testimony. However Father's opinion is not consistent with the undisputed fact that[,] after a drug and alcohol evaluation, Father was recommended in 2015, for intensive outpatient treatment. Thirdly, Father demonstrated a pattern of denying any responsibility for issues he brought to the marriage.

The parties completed the MMPI[-]2 [Minnesota Multiphasic Personality Inventory-2]. Dr. Chambers emphasized that the test alone was not definitive, and should correlate to life experiences to determine its weight. In this instance, Mother and Father's scores were valid within normal limits. Both Mother and Father showed elevations[,] which would tend to show a person who denied fault and blames others. Dr. Chambers found that there was consistency between the test results and the parties' life experiences. He further concluded that this elevation would hinder their ability to effectively co-parent.

Dr. Chambers interviewed C.K., who said that he worried about his parents['] fighting, and he gets mad when his brother antagonizes him. M.K. was not interviewed by Dr. Chambers. However, Dr. Chambers observed M.K. screaming and exhibiting disruptive behaviors. Mother re[-]directed [M.K.,] while Father ignored his behaviors. Dr. Chambers opined that both are techniques for addressing the behavior. However, managing the behavioral issues of Children is especially important. Consistency of interventions is necessary, and consistency of routine is essential. M.K.'s behaviors[,] specifically[,] are worsening based upon parent reports and collateral educational documents. Dr. Chambers opined that[,] due to the parent's [sic] inability to co-parent, it was "not conceivable at this point in time that they could carry out a plan" for Children. He testified that the parties' different styles of behavioral intervention have made it difficult for Children, especially M.K. Therefore, he further opined that shared custody would not be plausible or in the Children's best interest.

Dr. Chambers was questioned about the interactions between parents and [C]hildren[.] Dr. Chambers testified that

both parents were patient, but responded differently to M.K.'s behavioral issues. Mother was able to talk M.K. down from a tantrum. She demonstrated intentional intervention. Father did not demonstrate any behavior management techniques. Father ignored M.K.'s negative behaviors. Dr. Chambers described Father as the "fun dad". He further opined that[,] while both parents have personality issues, Mother's are more evident in her interactions with Father rather than with Children.

Having determined that shared custody was not plausible at this time, Dr. Chambers opined that Mother was best suited for primary physical custody. He testified that this would "allow for routine and consistency[,] which is the only way a therapeutic technique could take hold." He also recommended family therapy with an emphasis on behavioral interventions.

There was an emphasis in the testimony on cross-examination of Dr. Chambers regarding M.K.'s academics. While M.K. made some academic progress from 3rd to 4th grade, he made minor increases from "basic to proficient". However, there remained concerning issues with his behavior at school.

Dr. Chambers made his opinions to a reasonable degree of professional certainty. The totality of the evidence supported Dr. Chamber[s]'s opinion.

Father requested 50/50 shared legal and physical custody. Mother requested primary legal and physical custody. The [t]rial [c]ourt concluded that no credible evidence existed to support Mother having primary legal custody. While the undisputed evidence is that the parties have difficulty communicating, there was also evidence that Mother's lack of communication, personality issues, and anger toward Father would[, if Mother was given primary legal custody,] isolate Father from being included in major life decisions for … Children. Mother had in the past made unilateral decisions[,] purposefully excluding Father from the decision. Father participated and desired to do so in the educational and medical system[,] so as to have input in Children's lives. Therefore, [t]he [t]rial [c]ourt concluded that it would be in the best interest of Children for him to continue to do so.

Trial Court Opinion, 6/5/19, at 1-8 (footnote added).

- 8 -

On January 16, 2019, the trial court entered an order awarding Father and Mother shared legal custody, Mother primary physical custody, and Father partial physical custody of Children every other weekend, as well as Tuesday evenings.[2] Father timely filed a notice of appeal.

Father raises the following issues for our review:

> A. Whether the trial court erred and abused its discretion in failing to award equally shared custody and by reducing Father's custody, in light of the factors set forth in 23 Pa.C.S. § 5328?
>
> B. Whether the trial court erred and abused its discretion in giving no weight and therefore failing to consider the well-reasoned preference of the children?
>
> C. Whether the trial court erred and abused its discretion in failing to consider, at all, the testimony of several witnesses?
>
> D. Whether the trial court's findings of fact and legal analysis of the custody factors are not supported by the competent evidence of record from trial and are therefore manifestly unreasonable?

Father's Brief at 11.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S. § 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

---

[2] Pursuant to the January 16, 2019 custody order, Father no longer has custodial time on Tuesday overnights, and no longer has custodial time between Thursday and the beginning of the weekend every week. Instead, Father takes physical custody every Tuesday from after school or, if there is no school, from 4:00 p.m. until 7:00 p.m., and every other week on Friday from after school, or if there is no school, beginning at 4:00 p.m. until Sunday at 6:00 p.m.

determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In M.A.T. v. G.S.T., 989 A.2d 11 (Pa. Super. 2010) (en banc), we stated the following regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

Id. at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has stated:

"An abuse of discretion is not merely an error of judgment; if, in reaching a

conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted). With any custody case decided under the Act, the paramount concern is the best interests of the child. 23 Pa.C.S. §§ 5328, 5338.

Section 5323 of the Act provides for the following types of awards:

(a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323.

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. *E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "[a]ll of the factors listed in section 5328(a)

- 11 -

… when entering a custody order."  J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa.

Super. 2011) (emphasis in original).

Section 5328(a) of the Act provides as follows:

§ 5328.  Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

Further, we have explained as follows:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa. Super. 2013), appeal denied, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v.

> M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V. v. S.T., 87 A.3d 818, 822-823 (Pa. Super. 2014). "When a trial court orders a form of custody, the best interest of the child is paramount." S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted).

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court presented the following findings with respect to the custody factors set forth under 23 Pa.C.S. § 5328(a):

> 1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?
>
> This is a high conflict case. Both parties would permit contact between parent and [C]hildren; however, Father is less likely to encourage Children's relationship with Mother.
>
> 2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> There was a prior temporary [PFA] Order[,] which Mother withdrew by agreement. There is no evidence of a current risk of abuse. The history between parents contributes to their inability to effectively co-parent.
>
> 3. The parental duties performed by each party on behalf of the child.
>
> Both parties are capable of performing parental duties for the [C]hildren. Mother has slightly more flexibility due to her part-time employment. Mother makes most medical appointments for [C]hildren. Father participates in education events as he can due to his employment.

- 14 -

4. The need for stability and continuity in the child's education, family life and community life.

Due to Children's special needs, Mother is better equipped to allow a consistent routine. She is better equipped to use intentional intervention as needed. Mother has a consistent work schedule whereas Father's work schedule is different every week. Based upon the interactionals with Dr. Chambers, Mother is better with maintaining stability for Children. While both parties are involved with Children's educational needs, Mother is better at maintaining continuity of services.

5. The availability of extended family.

Father has extended family support with both his family and Mother's family. However, his engagement with Mother's family undermines Mother's wishes[,] as she is estranged from her family[,] despite his prior promise to Mother not to do so. Mother still has a relationship with her sister who lives in Kentucky[,] with whom she visits a few times a year.

6. The child's sibling relationships.

[C]hildren argue daily and engage in "shoving altercations" weekly. There are no siblings outside of the marriage.

7. The well-reasoned preference of the child, based on the child's maturity and judgment.

Due to the age and maturity of Children, this factor was given no weight.

8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

No evidence was submitted to the [trial court] to suggest that either party attempted to turn [C]hildren against the other party.

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

Both Mother and Father are likely to maintain a loving, stable, consistent and nurturing relationship with Children.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

Mother is more likely to attend to the daily physical, emotional, developmental, educational and special needs of [C]hildren. Mother's consistent work schedule and routine is beneficial to the special needs of both Children. Mother has demonstrated the ability to meet the daily special needs of Children.

11. The proximity of the residences of the parties.

Mother and Father live in the same school district; however, they are in different elementary school areas. No evidence was presented to prove distance is an issue for either party.

12. Each party's availability to care for the child or ability to make appropriate child-care arrangement[s].

Mother is more available due to her part-time employment. However, both parties have adequate childcare availability, if needed.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

This factor is by far the [most] critical of all factors. The high level of conflict between the parents makes it nearly impossible for them to co-parent. While the [trial court] would hope each parent would choose to engage in

individual therapy to address their anger toward the other, until they reconcile their hatred of each other and begin to co-parent[,] it is not in Children's best interest to have shared physical custody. The inability and unwillingness to co-parent especially with the special behavioral needs of Children make shared physical custody not plausible. Therefore, one parent must be the primary caretaker. Mother's historical role, plus the evidence of record places Mother in the best position to be primary caretaker.

14. The history of drug or alcohol abuse of a party or member of a party's household.

Father maintains he has no issue with alcohol despite a 2015 drug and alcohol evaluation which recommended intensive outpatient treatment. There is no evidence that either party currently has drug or alcohol abuse issues.

15. The mental and physical condition of a party or member of a party's household.

No substantive evidence regarding Mother or Father's current mental or physical conditions has been placed on the record. Mother was previously treated for depression and anxiety. Father is diagnosed with adjustment disorder. Since co-parenting counseling has failed previously, and since each parent needs to resolve their own issues prior to attempting co-parenting counseling in the future, no parental therapy is Ordered, but is highly recommended.

16. Any other relevant factor.

Dr. Chambers opined and the trial testimony supports that currently Mother and Father are not capable of successful co-parenting. While Mother has made some unilateral decisions without consulting Father and /or over Father's objection, Mother is best[-]suited to meet both the practical and emotional needs of Children on a daily basis.

Trial Court Opinion, 6/5/19, at 8-12.[3]

In his first and fourth issues, Father argues that the trial court did not present adequate reasoning under the custody factors set forth in 23 Pa.C.S. § 5328(a) to justify a reduction in Father's custodial time. Father's Brief at 16-25, 33-34. Specifically, Father challenges the trial court's application of factor one, id. at 18-23, factors four and ten, id. at 24 and 33-34, and factor fifteen, id. at 24-25. Essentially, in the first issue, Father asserts that the trial court opinion does not include any reasoning to explain why the court reduced his custody time, and further, that the factors do not warrant any such change in his time. In his fourth issue, Father claims that the trial court's decision that Mother is better suited for the role of primary custodian is manifestly unreasonable and is not supported by competent evidence of record. Accordingly, we will address Father's first and fourth issues together, as they are interrelated.

With regard to custody factor one, Father argues that the trial court failed to provide a basis for its conclusion that his custody time should be reduced. Specifically, under factor one the trial court found that "[b]oth parties would permit contact between parent and Children; however, Father is less likely to encourage Children's relationship with Mother." Trial Court

_____

[3] There was no evidence concerning factor 5328(a)(2.1), information concerning child abuse and involvement with protective services set forth in Section 5329(1) and (2). Thus, the trial court's failure to address the factor is of no consequence to our review.

Opinion, 6/5/19, at 8. Father asserts, however, the testimony showed that, on multiple occasions during his custodial time, he had the Children call Mother. Father's Brief at 18. He claims that, on Mother's birthday in January of 2018, he had Children bake Mother a cake, bought them gifts to give her, and had them call Mother, although it was his custodial time. Father's Brief at 18 (citing N.T. 10/15/18, at 141-143). The cited testimony, however, does not show that Father had Children bake a cake for Mother or that Father bought the gifts for Children to provide to Mother. In fact, Father's testimony reveals, instead, that Father sent Mother a message wishing her a happy birthday, and upon Mother's request, Father had Children call her. Id.

In further support of his claim, Father references Mother's testimony regarding Father's denial of her request to have weekend custodial time with Children on her birthday in 2017. Father's Brief at 21 (citing N.T., 10/16/18, at 10-11). Father contends that, in January of 2017, Mother's birthday fell on a day that Children had no school. He states that, although he would not allow Mother to have the Children in her custody on the weekend of her birthday, he did agree to allow her to have physical custody the entire day of her birthday, which was a Friday. Father's Brief at 23 (citing N.T., 10/16/18, Vol. II, at 138-140; N.T., 10/23/18, at 135-136). Father further alleges that Mother had custody of Children on the entire day of her birthday, as it was an in-service day for their school district. Father's Brief at 23 (citing Father's Exhibit 26; N.T. 10/23/18, at 136-137).

Our review of the certified record reflects that Father sent the following OFW message to Mother in reply to her request to have Children with her on the weekend of her birthday in 2017:

> [I]f they're off school on my weekend, then I would get them during that time. I understand that it is your birthday, but I lost part of my night Tuesday and all of tonight and all of next Tuesday and you never allow any make-up time and now we have to pay attorneys to figure it out. That does not makes sense to me, but that is your choice. If you want to spend the day with them, that is fine. I will meet you at the [Municipal Center] at 6:00 p.m. tomorrow. Happy Birthday.

N.T., 10/16/18, at 138; Father's Exhibit 23. However, Father's attitude exhibited in the message is not one of conciliation, as he suggests. Moreover, the cited testimony relied upon by Father is not sufficient for this Court to undermine the discretion of the trial court in reaching its determination as to factor one.

With regard to custody factors four and ten, Father contends that the record does not support the trial court's conclusions. Father's Brief at 24, 33-34. In the argument relating to his fourth issue, Father suggests that the testimony does not support that Children are thriving with Mother as primary custodian, so Mother should not have retained her role as primary custodian. Father's Brief at 34. Father asserts that Mother unilaterally discontinued M.K.'s mental health therapy and testified that she was unable to find a new therapist, although she declined to use therapists suggested by Father. Id. at 33-34. Father also complains that Mother unilaterally stopped administering Prozac to M.K. against Father's wishes and without the directive

of a physician. Id. at 33-34. Further, Father asserts that, contrary to the testimony of M.K.'s principal, K.W., Mother testified that M.K. is now struggling more than he did previously. Id. at 34. Father argues that, aside from Dr. Chambers's testimony that Mother and Father have differing techniques in handling Children's poor behavior, there is nothing in the record to support the trial court's decision to designate Mother the primary custodian. Father's Brief at 34. Essentially, Father argues that the trial court's determinations with regard to factors four and ten are not supported by the weight of the evidence presented.

We reiterate that "[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect ... . [T]he knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." Ketterer, 902 A.2d at 540. Again, "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." Bulgarelli, 934 A.2d at 111.

Father challenges the trial court's determinations with respect to factor four: the need for stability and continuity in the child's education, family life and community life; and factor ten: which party is more likely to attend to the

daily physical, emotional, developmental, educational, and special needs of the child. Concerning factor four, the trial court found the following:

> Due to Children's special needs, Mother is better equipped to allow a consistent routine. She is better equipped to use intentional intervention as needed. Mother has a consistent work schedule whereas Father's work schedule is different every week. Based upon the interactionals with Dr. Chambers, Mother is better with maintaining stability for Children. While both parties are involved with Children's educational needs, Mother is better at maintaining continuity of services.

Trial Court Opinion, 6/5/19, at 9.

> With regard to factor ten, the trial court found:

> Mother is more likely to attend to the daily physical, emotional, developmental, educational and special needs of [C]hildren. Mother's consistent work schedule and routine is beneficial to the special needs of both Children. Mother has demonstrated the ability to meet the daily special needs of Children.

Trial Court Opinion, 6/5/19, at 10-11.

We have reviewed the certified record and conclude that there is ample support for the trial court's factual conclusions with regard to factors four and ten, and the determination to add custodial time to Mother as primary custodian. Indeed, when asked whether Father was suggesting that M.K.'s behavioral problems have become worse because M.K. "doesn't get enough time with [Father]," Father replied: "No. Because there's really no consistency in [M.K.'s] schedule." N.T., 10/15/18, at 186. As evidenced by the trial court's findings concerning factors four and ten, ample consideration was given to the concerns of stability and consistency in Children's lives. The trial court's findings are congruent with Father's concerns for consistency in

schedule and are supported by the evidence presented to the trial court. Accordingly, we decline Father's invitation to reweigh the evidence.

In his first issue, Father last presents a challenge to the trial court's findings in relation to custody factor fifteen.[4] Father's Brief at 24-25. Father contends that the trial court improperly found that no substantive evidence regarding Mother or Father's current mental or physical conditions was placed on the record. Father asserts that the trial court failed to acknowledge that Mother was treated for mental health issues prior to the parties' separation and currently is prescribed Trintellix for mental health issues. Father's Brief at 24 (citing N.T., 10/16/18, Vol. II, at 132-134). Father complains that the trial court did not acknowledge in its opinion that he had engaged in individual mental health therapy, was not on any medication for mental health disorders, and that his therapist, Dr. Weismantle, had no concern for his mental health, stating that Father's focus in treatment was on Children. Father's Brief at 24-25 (citing N.T., 10/16/18, Vol. II, at 189-192).

The trial court made the following findings with regard to custody factor fifteen:

> No substantive evidence regarding Mother or Father's current mental or physical conditions has been placed on the record. Mother was previously treated for depression and anxiety. Father is diagnosed with adjustment disorder. Since co-parenting counseling has failed previously, and since each parent needs to resolve their own issues prior to attempting co-parenting

_____

[4] Custody factor fifteen addresses the mental and physical condition of a party or a member of a party's household.

counseling in the future, no parental therapy is Ordered, but is highly recommended.

Trial Court Opinion, 6/5/19, at 12. This statement is consistent with the evidence presented regarding Mother's and Father's mental health issues and evinces an understanding by the trial court of the mental health histories of both parties. Accordingly, Father's concerns regarding the trial court's findings pursuant to custody factor fifteen lack merit.

Ultimately, in his conclusion regarding issue one, Father contends that most of the custody best-interest factors in this case are neutral and do not favor either party, such that the trial court should have awarded equal shared physical custody. Id. at 25. We do not agree. Because we are bound by the trial court's credibility and weight assessments regarding the evidence, and the trial court's conclusions are not unreasonable, we will not disturb the trial court's decision to award primary physical custody to Mother. C.R.F. v. S.E.F., 45 A.3d at 443. Thus, we conclude that Father's first and fourth issues lack merit.

Next, Father argues that the trial court erred and abused its discretion in giving no weight to the well-reasoned preferences of Children. Father alleges that the trial court did not set forth any basis to conclude that Children were too young and too immature, especially eleven-year-old M.K., to state a well-reasoned preference or to ask any substantive questions regarding their custody time with either parent. Father's Brief at 25-31. Father asserts that as a child grows older, a court should give more weight to the child's

preference.  Father's Brief at 30 (citing Shoup v. Shoup, 390 A.2d 814, 817-818 (Pa. Super. 1978); Tomlinson v. Tomlinson, 374 A.2d 1386 (Pa. Super. 1977); and Williams v. Williams, 292 A.2d 870 (Pa. Super. 1972)).  Father also cites Bowser v. Bowser, 302 A.2d 450, 452 (Pa. Super. 1973), to support his contention that a child's preference may be accorded great weight at ten years of age and older.  Id. at 31.

In its opinion, the trial court stated the following:

The case at hand is not a case where a trial court disregarded a factor as implied by Father.  Rather, the [t]rial [c]ourt specifically considered the age, maturity and intelligence of ... Children and chose to afford their testimony no weight due to ... Children's age and maturity.  The [t]rial [c]ourt stated, "Due to the age and maturity of Children, this factor was given no weight."

The record evidence supports the [t]rial [c]ourt's determination of the weight to be afforded to ... Children.  ... Children have not yet reached the stage in their lives where they are mature or thoughtful.  Moreover, neither [c]hild provided a well-reasoned preference of custodial parent.  C.K. was 6 years old at the time of the hearing and in first grade.  M.K. was 11 years old and in fifth grade.  More importantly, both Children suffer from emotional challenges.  Dr. Chambers described that [C.K.] suffers from some emotional challenges, while [M.K.] suffers significant emotional challenges.  The testimony also established that M.K. (the older child) has significant behavioral problems in school.  The behavioral problems that M.K. exhibits, as well as the emotional difficulties and age of C.K., do not establish that type of maturity that would allow [the trial court] to give weight to their custodial preferences. Nonetheless, the [t]rial [c]ourt did speak with each child separately in chambers with all counsel present to personally assess their maturity and the basis on [sic] any preference they may have, as well as to allow them to express any concerns or thought.  Based upon these individual discussions in chambers, the [t]rial [c]ourt determined that ... [C]hildren did not possess sufficient maturity to give weight to any expressed preference.  Moreover, neither [c]hild in this case

- 25 -

> expressed any preference of custodial parent that is inconsistent with the [t]rial [c]ourt's award of custody, let alone a well-reasoned preference. Therefore, the [t]rial [c]ourt did not error [sic] or abuse its discretion in assigning no weight to any preference that may or may not have been expressed by ... Children.

Trial Court Opinion, 6/5/19, at 17-18 (emphasis added).

The cases Father cites in his brief precede the Child Custody Act, and, thus, cannot require the trial court to afford controlling weight to the preference of a child in a custody case under the Child Custody Act. As articulated by the trial court, Children in this case have special needs that factor on the amount of weight that the trial court would place on their preference as to which parent to award primary physical custody or whether to award equally shared physical custody. The trial court determined that, based upon Children's special needs, it would not place any weight on their preferences, but would make its determinations on the remaining custody best interest factors. We agree with the trial court that "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." M.J.M. v. M.L.G., 63 A.2d 331, 339 (Pa. Super. 2013) (citation omitted). We will not disturb the trial court's decision decline to afford weight to Children's preferences.

Finally, in his third issue, Father argues that the trial court erred and abused its discretion in weighing the testimony of various expert and lay

witnesses.[5]   Father's Brief at 31-33.   However, while Father developed this claim in his brief with more detail than was set out in his concise statement, Father's argument remains vague.   In its opinion, after stating that Father's concise statement was vague, the trial court explained:

> Nonetheless, the [t]rial [c]ourt did in fact consider every witness who testified or was proffered by each party.   The [t]rial [c]ourt issued extensive Findings of Fact in support of its decision following a meaningful review of and consideration of all of the testimony.
>
> At best, this issue raised by Father is a back door attack on the weight and credibility that the [t]rial [c]ourt afforded to a particular witness(es).   As discussed above, deference is given to the credibility and weight of the evidence afforded by the [t]rial [c]ourt.   The [t]rial [c]ourt's credibility and weight determinations are only subject to reversal where the [trial court's] conclusions are unreasonable as shown by record evidence.   Because the [t]rial [c]ourt's conclusions are reasonable as shown by the evidence of record, [the trial court] did not commit an abuse of discretion and/or an error of law.

Trial Court Opinion, 6/5/19, at 18-19.

_____

[5]   Specifically, Father contends that the trial court erred in failing to consider that Dr. Bernstein, who submitted a critique of Dr. Chambers's testimony and gave testimony at the custody trial, "contradicted in many ways" the testimony of Dr. Chambers, upon which the trial court relied.   Father's Brief, at 31-32.   Father also asserts that the trial court should have considered the testimony of K.W., Children's elementary school principal, which Father claims contradicted the testimony offered by Dr. Chambers and Mother.   Id. at 31. Moreover, Father contends that the trial court erred and abused its discretion in failing to consider the testimony of M.K., Mother's half-sister, who testified regarding the deterioration of the family relationship between Mother and her side of the family.   Id.   Father complains that the trial court did not "mention" the testimony of Dr. Weismantle, Father's treating psychologist, who testified to Father's mental health status.   Id.   Father also alleges that the trial court did not consider or discuss the testimony of his long-term friend, D.M.   Id. at 32.

J-A26013-19

With regard to the testimony of expert witnesses, we have stated:

> The trial court was under no obligation to delegate its decision-making authority to [the custody evaluator]. See, e.g., K.W.B. v. E.A.B., 698 A.2d 609, 613 (1997). It is an abuse of discretion, however, for a trial court to dismiss "as unpersuasive, and to totally discount, uncontradicted expert testimony. Murphey [v. Hatala], 504 A.2d [917,] 922; see also Rinehimer v. Rinehimer, 336 Pa. Super. 446, 485 A.2d 1166, 1169 (1984) (while not required to accept their conclusions, "[t]he lower court was obligated to consider the testimony of the two experts[.]"); Straub v. Tyahla, 247 Pa. Super. 411, 418 A.2d 472, 476 (1980) ("[W]e conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist."). Accordingly, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. See Nomland v. Nomland, 813 A.2d 850, 854 (Pa. Super. 2002) ("To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts.") (citations and quotation marks omitted).

M.A.T., 989 A.2d at 19-20.

Upon review of the record, we find that the trial court considered Dr. Chambers's expert opinion and recommendation as well as Dr. Bernstein's expert critique of Dr. Chambers's recommendation, and that its decision to follow Dr. Chambers's expert opinion and recommendation is supported by competent evidence of record. M.A.T., 989 A.2d at 19-20; Nomland, 813 A.2d at 854. Thus, we discern no error of law or abuse of discretion by the

- 28 -

trial court with regard to its consideration of the expert testimony and recommendations.

With regard to the remaining witnesses, again, we agree with the trial court that "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." M.J.M., 63 A.3d at 339 (citation omitted). As we are bound by the trial court's credibility and weight assessments regarding the evidence, and the trial court's conclusions are not unreasonable, we will not disturb the trial court's decision not to award equally shared physical custody to the parties, and to award primary physical custody to Mother. C.R.F. v. S.E.F., 45 A.3d at 443. Accordingly, we conclude that Father's claim fails, and we affirm the trial court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2020