480 A.2d 1117

**Diane CHASE, Appellant**

v.

**Michael CHASE.**

Superior Court of Pennsylvania.

Argued January 24, 1984.

Filed July 6, 1984.

---

446

James McConomy, Pittsburgh, for appellant.

Rosemary Markham, Pittsburgh, for appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the trial court's order of equitable distribution, alimony, child support, and counsel fees in an action filed by appellant, Diane Chase, against her former husband, Michael Chase. This appeal followed. We affirm.

Appellant contends that the trial court abused its discretion when it set aside *sub silentio* a support order of the court which awarded to the wife one-half of the husband's 1982 bonus, net after taxes, which was paid by the husband's employer to him in January, 1983.

The procedural history surrounding this case reveals a court docket consisting of over one hundred and fifty-three (153) entries.

The basic facts are undisputed. On July 29, 1980, appellant, Diane Chase, filed a support complaint for herself and two children, Kevin, age fourteen, and Michael, age eleven. On November 14, 1980, the trial court entered a support order following a hearing requiring the appellee (1) to pay $1,500.00 per month; (2) to pay the mortgage, taxes, and insurance on the parties marital home; (3) to provide medical and dental coverage; (4) to make a one-time payment of $1,500.00; (5) to maintain payments on joint debts listed and to provide club memberships and pay dues and assessments for appellant and the children; and (6) "to pay ½ of the bonus to [appellant] upon receipt in 1981 and each year thereafter net after taxes." Record at No. 8. The order also provided that appellee could elect to file a joint return with appellant.

A hearing was held on February 27, 1981, before a hearing officer because appellant sought a contempt order for failure to pay the bonus. The parties disagreed on whether the order provided for the payment of the 1981 [1] bonus, which consisted of $72,500.00, after taxes were withheld by the employer or after taxes were paid by parties to the federal government for the calendar year. The officer denied the contempt petition and concluded that a deduction would be allowed only for the amounts withheld by the employer. The trial court affirmed this recommendation. The appellee appealed the construction of the order to this Court on April 16, 1981.

In the interim, appellant filed a divorce complaint and petition for equitable distribution, child custody, support, and counsel fees. The trial court granted a bifurcated divorce on April 23, 1982, a divorce whereby the court retained jurisdiction over the outstanding economic issues in the case notwithstanding the granting of the divorce.

Hearings were held on the unresolved economic issues on August 19th and November 15th of 1982. The reasons for the trial court's award in favor of the appellant-wife were adequately set forth by the trial court in a ten page opinion.

The relevant portions of the trial court's opinion discloses the parties' circumstances in the following manner:

Pursuant to her divorce action, Diane L. Chase (wife), is seeking property distribution, alimony, support, and counsel fees from her former husband, Michael R. Chase (husband). The parties were married in June of 1965, following husband's graduation from the University of Colorado, where wife was also a student. Wife was unable to complete her undergraduate studies and accompanied husband with his new-found business degree so that he could complete graduate studies at the American Institute of Foreign Trade in Phoenix, Arizona. He held a part-time job, while she

1. The bonus "was based on what transpired the year before"; however, the amount was not actually received until the following year. N.T. 11/15/82 at 39. Thus, the bonus which was received in 1981 was based on the services performed in 1980.

worked, and, following graduation, husband went into the military service, while she returned to live with her family in California. After a year, husband was placed on reserve status and began his employment with a New York bank in 1967. The wife worked in New York City while he was assigned there and went with him when he was transferred to Argentina and, eventually, Puerto Rico. While in Puerto Rico, their first child, Kevin, was born. In 1971, husband left the employ of the bank and began his employment with a mortgage company located in Atlanta, Georgia. In 1973, their son, Michael, was born. In 1974, husband assumed his present position with a prominent private company and was transferred to Allegheny County where, after several months, the parties obtained the present marital residence in Fox Chapel.

Husband's talents were obviously recognized by his employer and his gross compensation went from $74,000.00 in 1976 to $92,000.00 in 1977, $98,000.00 in 1978 and almost $114,000.00 in 1979. His gross compensation in 1980 was approximately $131,000.00. During these years of growing affluence, the parties continued to enjoy their Fox Chapel home, together with vehicles and club memberships provided by husband's employer. The children attended private schools and enjoyed an appropriate, albeit not extravagant, life style. In fact, husband indicated that the families' approximate living costs during 1979 were $2,000.00 per month, exclusive of debt repayment, tuition costs, and mortgage payments.

During the first week of April, 1980, husband left the marital domicile. Following the parties' separation, husband continued to pay the home mortgage, the household expenses and, in addition, gave wife $1,000.00 per month. She brought a support action, and, in the litigation that followed, there emerged a consent order which required husband to pay wife for her and the children's support the sum of $1,500.00, as well as the mortgage of approximately $900.00. In addition, he was to pay one-half of a bonus which he was to receive in January of 1981, said amount to

be paid "after taxes". The interpretation of "after taxes" was appealed to the Superior Court. *See* pages 451–453, *infra*. Also, incident to the consent order, husband was to pay and has paid certain joint debts totaling approximately $18,-000.00. On April 23, 1982, the parties were granted a bifurcated divorce. Prior to the divorce, husband was transferred by his employer to California, and thereafter he remarried and resides with his new wife together with her three children, the custody of whom was the subject of other litigation in this court. Trial Court Opinion at 1–3.

The trial court divided the marital property and awarded support in the following manner:

### "DECREE NISI

AND NOW, this 15th day of March, 1983, it is ORDERED, ADJUDGED and DECREED that:

1. Plaintiff, Diane Chase, is hereby awarded:

a. The family residence located at 104 Westchester Drive, Borough of Fox Chapel, Pennsylvania, together with the furniture and fixtures contained therein, free and clear of the mortgage encumbrance which shall be the sole liability of the defendant, Michael Chase.

In the event of the sale or transfer of said residence resulting in the satisfaction of said mortgage, the defendant shall be liable to the plaintiff for the unpaid balance under the same terms and conditions as the mortgage loan, which may be prepaid at any time.

b. State Street Money Market Fund ... $5,000.00

2. Defendant, Michael Chase, is awarded the following:

| | | |
|---|---|---|
| a. | Balance of net proceeds of partnership | $35,000.00 |
| b. | His non-contributory savings plan | $20,000.00 |
| c. | Balance, Big Rivers Fund | $10,000.00 |
| d. | Balance, State Street Money Market Fund | $11,000.00 |
| e. | Balance, Dreyfus Tax Exempt Fund | $2,500.00 |

3. *Until such time as their older child, Kevin, attains the age of 18, defendant shall pay plaintiff alimony and child support of $2,500.00 per month. Thereafter, said payment shall be $2,000 until the younger son, Michael, is 18, at which time all alimony and child support shall terminate. These payments shall be retroactive to January 1, 1983, creating an arrearage of $3,000 through March 31, 1983, which defendant shall pay forthwith.*

4. Defendant shall pay the children's:

(a). private school and camp charges, including tuition, books, transportation and special fees, excluding food if not part of the tuition charges, retroactive to January 1, 1983;

(b). transportation for partial custody; and,

(c). unreimbursed dental and medical expenses to the extent of $50.00 per month each not covered by his employer's insurance policies, as well as all orthodontia expense.

5. Defendant shall pay to plaintiff the sum of $5,000 on account of her counsel fees, from which shall be deducted $575.00 as reimbursement to defendant for counsel fees incurred by him, said payment being sanctions for vexatious and obdurate conduct, for a net obligation of $4,425.

6. Any other claims pending hereunder are hereby dismissed.

7. This Decree shall become final in accordance with Pa.R.C.P. Rules Nos. 1920.52(a) and 1038(d) and (e).

BY THE COURT:

Kaplan, J.

Approximately one month after the court entered its award, this Court agreed with the trial court's interpretation that the husband was to pay one-half (½) the bonus which was received in 1981 after taxes were withheld by the employer. *Chase v. Chase*, 312 Pa.Super. 595, 459 A.2d 21 (1983) (Chase I). The trial court dismissed appellant's ex-

ceptions subsequent to the disposition of the first appeal, and this appeal, Chase II, followed.

The only aspect of the award which appellant challenges in this appeal is that portion of the order which provides that the effective date of the alimony and child support is January 1, 1983.

■ When reviewing determinations made by the trial court in support cases, our scope of review is narrowly defined. *Commonwealth ex rel. Simpson v. Simpson*, 287 Pa.Super. 356, 358, 430 A.2d 323, 325 (1981). We have said that " '[o]rders of support from the court below will not be modified on appeal except for a manifest abuse of discretion.' " *Id.* (*quoting Commonwealth ex rel. Raitt v. Raitt*, 203 Pa.Super. 226, 199 A.2d 512 (1964)). Simply stated, if there is sufficient evidence to sustain the trial court's decision, that decision will be affirmed. *Commonwealth ex rel. Grallnick v. Grallnick*, 279 Pa.Super. 347, 349, 421 A.2d 232, 234 (1980). This is because "[t]he trial judge who hears a support case can view the parties and hear their testimony which gives him an insite [sic] that the appellate court does not have." *Id.*

We also have said that:

" 'the factors to be considered are the spouse's income, potential earning power, and the extent of his property and financial resources. *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977); *Shuster v. Shuster*, 226 Pa.Super. 542, 323 A.2d 760 (1974). The amount of [the] award must be fair, nonconfiscatory, and attendant to the circumstances of the parties. *Commonwealth ex rel. Malizia v. Malizia*, 229 Pa.Super. 108, 324 A.2d 386 (1974); *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 310 A.2d 672 (1973).' *Straub [v. Tyahla*, 274 Pa.Super. 411, 414, 418 A.2d 472, 474 (1980) ]. *Boni v. Boni*, 302 Pa.Super. 102, 110, 448 A.2d 547, 551 (1982).

In the instant case, we conclude that the trial court did not abuse its discretion.

■ In reviewing claims by a party regarding the effective date of a support order, we recognize generally that "[a]n order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise." Pa.R.C.P. 1910.17(a).

Applying this rule to the facts of the instant case, we note that the trial court entered an initial support order on November 14, 1980. This order formed the basis of the appeal in Chase I and "was an interim order." N.T. at 30. The trial court was without jurisdiction to rule on the issue which was pending before the Superior Court (i.e., the bonus which was received in 1981) because after an appeal is taken, the trial court "may no longer proceed further in the matter." Pa.R.A.P. 1701(a). Thus, the trial court commenced proceedings in the meantime to formulate a final order. In fact, appellant's counsel even conceded that the trial court had reserved the question of the effective date of any final support order. The following portions of the record reveal the procedural posture of the case:

"MS. MARKHAM [Appellee's Attorney]: One final procedural matter here. Your Honor signed an Order in the first quarter of this year, response to request for increase in support. At that time you reserved the issue of child support and spousal support to this hearing subject to defenses thereto. It would be my position that the matter before the Superior Court has its own space and time as a support action, and whatever Order Superior Court hands down can be dealt with as matters *preceding this Court's authority for permanent support, alimony and for child support from this point forward. We believe there is a new child support case, if you will, or a new look by this Court at the issues. You are not forestalled by the Order entered by—*

THE COURT: I don't think Mr. Scott will argue with that.

MR. SCOTT [Appellant's Attorney]: *Not at all. If the Court please, on March 2, 1982, the Order Ms. Markham referred to, this Court reserved the question of*

*increase in the support award without prejudice to be retroactive should this Court deem so.*

THE COURT: I seem to have some recollection of that. We will settle all economic issues in the course of the hearing, except perhaps the one which is on appeal.

MR. SCOTT: One we agreed to defer concerning the taxes, related to A and C [a partnership fund]. And, Your Honor, also we can have the rate of attorney fees, actually until the hearing is concluded, any motions thereafter, my total attorney fees won't be able to be presented to the Court.

THE COURT: I understand that. That is a problem in presenting claims for counsel fees that we never know what the total fees will be for the action currently being tried. I would like to be optimistic and think we will finish this [sic] this afternoon. I don't know if that will be the case. The issues we will be getting into may very well permit that. Having laid out our blueprint of what the property is here, the time spent here is very productive. We can deal with the other issues, go into determination of the property distribution. We are talking about mainly standard of living, lifestyle and needs, and things of that nature that enter into the ten factors set forth in 401 of the Divorce Code [2] and fourteen factors of Section

**2.** Section 401(d) of the new Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, sets forth the following relevant factors:

"(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

501 pertaining to alimony.[3]  So, those factors are the things that I would like to be able to get into and get a feeling for, so that I can issue an appropriate order in the areas we are talking about.

MS. MARKHAM: We would certainly want an order, if only an interim order, to relieve us from the order that is going on right now.  We are facing yet a third year under Judge Strassburger's interpretation of our consent order. I certainly hope Superior Court will come down quickly but—

THE COURT: *Whatever that is, that is.  That was interim order.  What we are trying to do here is come up with a final, final as any of these matters can be in*

(10) The economic circumstances of each party at the time the division of property is to become effective."  23 P.S. § 401.

**3.** Section 501(b) states:
"(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:
(1) The relative earnings and earning capacities of the parties.
(2) The ages, and the physical, mental and emotional conditions of the parties.
(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.
(4) The expectancies and inheritances of the parties.
(5) The duration of the marriage.
(6) The contribution by one party to the education, training or increased earning power of the other party.
(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.
(8) The standard of living of the parties established during the marriage.
(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
(10) The relative assets and liabilities of the parties.
(11) The property brought to the marriage by either party.
(12) The contribution of a spouse as homemaker.
(13) The relative needs of the parties.
(14) The marital misconduct of either of the parties during the marriage;  however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony."  23 P.S. § 501(b)

*a Divorce Code, one certainly which will dispose of the property matters and based upon disposition of the property, then integrated therewith as required by the Divorce Code, order for alimony if appropriate and certainly support."* (N.T. 8/19/82 at 27–30.) (Emphasis added)

The trial court conducted two days of hearings and on March 15, 1983 concluded that the order was effective January 1, 1983. Interestingly enough, appellant does not challenge the $1,000.00 increase in alimony and child support which she received in the final order, nor does she challenge any of the equitable distribution provisions of that order. Rather, her sole contention is framed in the following manner:

"By not awarding the January, 1983 bonus the court retroactively reduced the amount of support the wife was entitled to have received for *1982* under the prior Order. That January, 1983 bonus had already accrued to the wife by year end 1982 is amply demonstrated by the record." Brief for Appellant at 14.[4]

■ Before this Court, appellant argues that she was *entitled* to the 1982 bonus which was to be received in 1983. This entitlement theory, however, is not supported by the record since the record shows that the 1980 support order was a temporary one.[5]

---

**4.** According to appellant, "[t]he bonus is customarily paid on or about the 2nd of January of each year." "MOTION FOR AN ACCOUNTING, PAYMENT OF BONUS AND RULE TO SHOW CAUSE WHY THE DEFENDANT SHOULD NOT BE HELD IN CONTEMPT", Allegation No. 2.

**5.** According to appellant, the court's final support order "must be based upon facts appearing in the record which show a permanent change in circumstances as to require modification of an existing order." Brief for Appellant at 14. Appellant, however, misperceives the issue since the initial support order entered by consent of the parties was a temporary one which was rendered pending the outcome of the final decree and did not entitle her to payment of the bonus *ad infinitum.* In fact, the Chase I appeal involved the bonus which was received in 1981 only. *See* Appellant's "MOTION FOR ACCOUNTING, PAYMENT OF BONUS AND RULE TO SHOW CAUSE WHY THE DEFENDANT SHOULD NOT BE HELD IN CONTEMPT"

We note that appellant argued at the trial level a position which was contrary to the one she has taken before this Court. The following portion of the record establishes that appellant rejected any notion that the bonus which was received by Michael Chase in the current year "had already accrued to the wife by [the previous] year's end":

Appellant's Attorney:

"In the same Interrogatories, question No. 7, state your gross and net earnings to date for the year 1981 and indicate the source of earnings including a description of the form of the bonus currently in effect. Answer. Gross as of September 29, 1981, $140,000. Net, see response to Interrogatory No. 5 above of the gross earnings, $67,500 was received as salary. $72,500 was received as discretionary bonus paid in January, 1981.

*Your Honor, for the record we quarrel with January, 1981, being 1980 income, but we do not quarrel with the amount of $72,500 received, nor the fact it was received in January, 1981.*"

N.T. 8/19/82 at 54–55. (Emphasis added)

Additionally, although appellant now challenges the retroactive aspect of the order, she requested a retroactive increase in the support order at the trial level. The following discussion at trial sheds some insight into the subject:

"BY MR. SCOTT [Appellant's Attorney]:

Q  You heard Ms. Markham state obligations of Mr. Chase pursuant to November 14 Order. Has Mr. Chase made all of the payments required under that Order on time?

A  No.

Q  Which payments has he not made on time?

MS. MARKHAM [Appellee's Attorney]: I don't understand the relevancy.

MR. SCOTT: History of the payment structure from this Defendant to indicate to the Court she has been

("This Honorable Court by Order dated November 14, 1980, ordered the Defendant, inter alia, to pay ½ of the bonus upon receipt *in 1981* . . . net after taxes.") (Emphasis added)

cash poor for the past two and a half years. *We are trying to develop testimony to get retroactive support order.* What he has done to her, he has taken her out of the be [sic] able to plan basis and adversely affected her standard of living. She had to borrow money.

MS. MARKHAM: There is no outstanding contempt order. The payments have been received. I don't understand this line.

THE COURT: To the extent that you are alleging that—I am not sure the lateness of payments are important. If you want to direct questions to her as to the adequacy of the payments she is receiving, what extent she is able to meet her obligations, I have no objections to that. *That would be an indication to me either she is getting along just great, does not need any more, which I doubt is the line of your questioning, or indicate to me that, as probably will, based upon her budget, she is coming up short.* If you want to direct your questions along that line, I will entertain them.

MR. SCOTT: There is adequate evidence in the record now and the Plaintiff rests."

N.T. 8/19/82 at 90–92. (Emphasis added)

A careful review of appellant's claim, although couched in retroactive language, is actually a prospective argument. She is contending that the bonuses which Michael Chase received should have been granted to her prospectively, i.e., from the date of the original support order up to and including the bonus he received in 1983. However, as stated *infra*, the trial court concluded that appellant was not entitled to the 1983 bonus prospectively. Rather, the court granted appellant a retroactive increase in support instead. Interestingly enough, appellant does *not* argue that the retroactive increase in support should be retroactive to the date of the filing of the complaint.[6] This is obvious because the final support award does not grant to appellant a percentage of her former husband's bonus.

6. *See Shovlin v. Shovlin,* 318 Pa.Super. 516, 465 A.2d 673 (1983).

Thus, the bonus award which appellant did receive from the years 1981 and 1982 were interim payments.

Moreover, the opinion of the trial court reveals a thoughtful consideration of the family's economic status and the husband's income and ability to pay. The trial court awarded the marital home to the wife and noted that because the wife was "[f]reed from any mortgage obligations, this should permit wife and children to meet their reasonable living expenses and maintain the standard to which they have been accustomed." Trial Court's Opinion at 8.

The remainder of the court's opinion also indicates a careful balancing of the parties circumstances:

"We will first consider the claim for property division. In the case of *Margaret W. v. Paul W.*, 130 P.L.J. 6 (1982), this court has taken the position that equal division of marital assets is the starting point in determining what is equitable unless other factors intervene for a contrary result. In reviewing the various factors of Section 401 of the Divorce Code, it would appear that wife is 37 years of age while the husband is 39. This was the first marriage for both parties and both are in good health. It would appear that neither party brought any property of substance to the marriage and that which has been previously set forth as the marital assets is that which must now be appropriately allocated between the parties. On balance, both parties contributed equally toward the marital property owned at separation, taking into account wife's contribution as a homemaker.

Two factors weigh heavily in this matter. One is the fact that the wife is the custodial parent, and, where it is financially possible, we will endeavor to try to maintain as much stability in the children's lives by way of perpetuating their former life style. To this end, a way must be contrived which will permit them to continue to live with their mother as the agreed upon custodial parent in the familiar surroundings of their family home. The second factor which we find most important is the parties' ability and likelihood of accumulating additional property and

income in the future. In this regard, it is obvious that the husband's star is on the ascendancy, whereas the wife has little, if any, prospect of bettering herself beyond average employment once she has obtained additional schooling and/or vocational skills. In order to meet the imperatives of these two latter factors, equity demands other than an equal division of the marital property. To that end, we will award her the parties' residence together with the furniture contained therein, free and clear of any mortgage encumbrance. We will award the husband the net proceeds of the partnership amounting to approximately $35,000.00, his non-contributory savings plan, valued at $20,800.00 as of the time of separation,[*] the Big Rivers investment worth approximately $1,000.00, the money market account of $16,000.00 (less the $5,000.00 already received by the wife, which amount we award to her) and, finally, the Dreyfus Fund valued at approximately $2,500.00. In addition, any interest forthcoming on these assets shall be the property of husband. Husband shall have the option to prepay the existing mortgage or to continue to pay it at the current rate. Such payments shall not include taxes and insurance which shall be the responsibility of the wife. Finally, the $18,-000 in joint debts which husband was ordered to pay as part of the initial support order, shall be deemed his sole obligation, the support order having taken these debts into account as his responsibility.

While it would appear that this distribution has the effect of giving to the wife the equivalent of almost the entire marital assets, it does permit the husband to continue installment payments with appropriate interest deductions for tax purposes. In the event of the sale of the residence by the wife, the unpaid mortgage balance which would, of necessity, be satisfied out of the proceeds of sale would then become an obligation under the same terms and conditions payable directly to the wife, by the husband. With his entreprenurial skills, the husband should be able to duplicate all of the marital assets as presently constituted many times over within the next

several years. In fact, based upon the record, he is already well on his way toward doing so.

## III.

In order for the parties' children to continue a life style consistent with that of their father, their mother will, of necessity, also benefit from the arrangements. Wife will, of course, require some time before she can reenter the job market and participate in the family earnings. We find her needs, however, to be only incidental to those of the children. To that end, as apparently agreed by the husband, he is to pay the children's private school charges, including tuition books, transportation and special fees, but excluding meals. In addition, he is to pay for the children's summer camps and transportation thereto and back. He has already undertaken by the consent custody order to meet their transportation expenses on the extended visits with him in California or whereever he may be residing. In addition to the above, husband will be required to pay to wife for her maintenance (alimony) and support of the children the sum of $2,500.00 per month. Freed from any mortgage obligations, this should permit wife and children to meet their reasonable living expenses and maintain the standard to which they have been accustomed. This sum will permit wife to pay the real estate taxes, her own health insurance, and meet taxes which she will have to pay on this income. The husband will be expected to continue to cover the children on his employer's health and dental insurance, pay for any orthodontia which they may incur and, in addition, pay for an additional $50.00 per month per child for any unreimbursed medical or dental expenses. When Kevin is 18 years of age, this combined maintenance payment shall be reduced by $500.00 and when Michael is 18 years of age, all maintenance and support payments shall terminate.[**] In the event that wife shall remarry or cohabit, within the meaning of the Divorce Code, in the event the parties cannot agree to a

462

reasonable child support amount, modification may be requested of the court.

The foregoing arrangement should permit a stable income for wife and the children, which amount can, eventually, be supplemented by wife's entry into the job market. The provisions of this section shall be retroactive to January 1, 1983. To the extent that wife has already made tuition payments for 1983, she shall be entitled to reimbursement from husband.

[*] Although this asset is not now vested, there is no reason to believe that such will not be the case at the appropriate time in 1984. Husband, in effect, will be able to control whether he will eventually be able to receive this asset.

[**] We assume that if he is financially able to do so without undue hardship, that husband will provide appropriate college educations for the children."

Trial Court Opinion at 5-9.

■ Accordingly, we are unable to conclude that the trial court abused its discretion in ordering the support award to take effect on January 1, 1983.

Order is affirmed.