J-A28006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MEGAN ASPLUNDH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY ANTONIO PENDERGRASS | : | No. 1904 EDA 2023 |

Appeal from the Order Entered June 8, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2016-26394

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 11, 2024**

Appellant, Megan Asplundh (Mother), appeals from the order entered on June 8, 2023,[1] granting a petition for the modification of custody filed by Timothy Antonio Pendergrass (Father) to vaccinate the parties' minor, 10-year-old daughter, N.P (Child), against Covid-19.  Upon careful consideration, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  Father and Mother were married in July 2012.  In 2016, Mother filed a complaint for divorce.  In her complaint, Mother requested primary physical

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Mother purports to appeal from the trial court's July 12, 2023 decision denying her motion for reconsideration, the appeal properly lies from the order entered on June 8, 2023 which resolved all outstanding issues.  **See** Pa.R.A.P. 341(b)(1) (stating, a final order is one that "disposes of all claims and all parties.").  As such, we have changed the caption accordingly.

custody and shared legal custody of Child. At a conciliation conference, the parties submitted written stipulations regarding a vaccination schedule for Child.[2] On June 1, 2017, following a subsequent hearing before the trial court, the court entered an order granting Mother primary physical custody and Father partial physical custody, and awarding shared legal custody of Child. The previously agreed 2017 vaccination stipulations were incorporated into the custody order.

On February 1, 2022, Father filed a petition to modify custody, requesting that Child be vaccinated against Covid-19. On March 10, 2023, Mother filed an answer and counterclaim objecting to modification of the prior vaccination stipulations based, *inter alia*, upon family medical history. The trial court held a five-day hearing on the matter commencing on October 26, 2022. Both Mother and Father testified. The parties stipulated that Child's school did not require student Covid-19 vaccinations. Father presented written documentation from the Center for Disease Control (CDC) showing its vaccine recommendations and schedules regarding Covid-19. Mother presented the testimony of Elizabeth Mumper, M.D. (Dr. Mumper), an expert in pediatrics and child vaccination.

---

[2] At the time of the 2017 conciliation, Child had not been immunized and the parties agreed, *inter alia*, to comply with the vaccination requirements of Child's school, attend Child's vaccination appointments together, and set limited parameters for treatments administered after vaccination, including receiving a second medical opinion in the event of adverse reactions. **See** Exhibit A, Amended Custody Order, 6/8/2023, at ¶¶ 1-7.

More specifically, the trial court summarized the evidence presented as follows:

Father testified that he sought to pursue a Covid-19 vaccination for [] Child  because (i) the vaccine has been proven safe and effective, (ii) there is a social responsibility to do everything [] to mitigate the effects of the disease collectively and (iii) Covid [was] coming back in the fall and [Father was expecting] a newborn child [and] want[ed] Child to be able to enjoy what it [felt] like to be a big sister and not have any stresses or any other issues [] that would impact [] how precious that experience [would] be.

Father testified that he would have preferred that [] Child resume in-person schooling in January 2021 because the benefits of socialization outweighed potential risks of contracting coronavirus.  Father further testified that he took [] Child to indoor dining as prescribed by [] health care officials and establishments and followed masking restrictions generally.  And, Father testified that he was not comfortable with the vaccination stipulations created in 2017 (which he claimed [were]  imposed as part of the custody proceeding) and was requesting that [they] be amended.

Mother testified to a number of concerns that she had about vaccinations in general and the Covid-19 vaccine specifically. Mother expressed concern in general about the vaccinations due to Mother's medical history of [irritable bowel syndrome], food sensitivities, seasonal allergies, food allergies, [and] migraines[.] Mother testified that she believed the vaccination stipulations to be a compromise between her and Father[] which allowed [] Child to have the required vaccinations for schooling but not to rehash the matter with respect to new vaccines or developments.  Mother also specifically testified that she was concerned that the Covid vaccine [] had, in the first month[,] more reactions than all the other vaccines combined.  Finally, Mother testified [that] Covid-19 cases within [] Child's school [] was encouragingly low in the student population [as of] February 2023.

Both parties acknowledged that [] Child's school [] did not require the Covid-19 vaccination for students.  However, Father produced an e-mail from [the school] dated August 6, 2021 regarding [] Covid-19 procedures for the 2021-2022 school year.  The email provided that it [was] essential that all medically eligible members

- 3 -

of [the] community, faculty and staff, children and family members be vaccinated to protect themselves and others.

Mother offered Dr. Mumper as an expert in the field of pediatrics and the Covid-19 vaccination in children. Dr. Mumper testified with respect to the Covid-19 virus and vaccination generally and [] Child's potential reactions specifically. Dr. Mumper testified that children in general [were] at a very, very low risk of death from Covid or serious side effects from Covid. She further testified that she had reviewed [] Child's medical records and concluded that for a healthy child[,] like Child[,] her risk based on the CDC [data] would be about one in [2.5] million deaths. Dr. Mumper concluded that the risk[s] of the vaccine[,] in [her] best medical judgment[,] far outweigh[ed] the risk that she would face from Covid itself.

Dr. Mumper further testified about several cases of reactions from the Covid-19 vaccine noted in the Vaccine Adverse Reporting System ("VAERS") which, at the time of her testimony, had over [1.5] million reports of various types of side effects. On cross-examination, Dr. Mumper acknowledged that anybody can file a [VAERS] report [after] which the CDC reviews the report. She testified that there[ is] a backlog [of] thousands of reports from 2022 that the CDC has not reviewed. Dr. Mumper also acknowledged that nearly [80%] of the deaths [listed on] VAERS [concerned] persons aged [60] or older or people who have underlying [medical] conditions.

Dr. Mumper testified on cross-examination that she was aware of the CDC recommendation that someone of [] Child's age should be vaccinated for Covid-19 and that the latest CDC recommendations [were issued in] October [] 2022. [Dr. Mumper] disagree[d] with that recommendation. Dr. Mumper[, however,] was not licensed to practice medicine in Pennsylvania and had not examined nor seen [] Child in person or remotely.

After the attorneys completed their questioning, the [trial] court asked some questions of Dr. Mumper. Specifically, the court asked Dr. Mumper to reconcile the fact that her opinions regarding Covid-19 vaccinations for children [were] in contrast to the recommendations of the CDC, the Food and Drug Administration ("FDA") and the Nations Institutes of Health ("NIH") – each of which recommend[ed] Covid-19 vaccinations for children. Dr. Mumper testified that [it was] hard to believe [she] would disagree with people in those agencies but stated that government

- 4 -

agencies are intimately intertwined with the pharmaceutical industry and may be generally biased towards vaccines for financial reasons. The court then questioned Dr. Mumper about the Mayo Clinic, a non-government entity, which also recommends vaccination for children; Dr. Mumper acknowledged the Mayo[] Clinic's position [but] testified [the policy was] wrong in regards to children.

Trial Court Opinion, 9/8/2023, at 2-4 (unnecessary capitalization, record citations, quotations, and original brackets omitted).

On June 6, 2023, the trial court entered an order granting Father relief and directing the parties to vaccinate Child for Covid-19 based upon the recommendations of the CDC. On June 8, 2023, the trial court amended the June 6, 2023 order to attach the parties' 2017 vaccination stipulations as an exhibit. On June 9, 2023, after Mother filed a request for reconsideration and stay, the trial court granted a partial stay regarding vaccination, pending argument on reconsideration. On July 7, 2023, the trial court held a hearing. On July 12, 2023, the trial court granted a partial stay from vaccinating Child for Covid-19 pending an appeal with this Court, but otherwise denied Mother's request for modification of the June 8, 2023 custody order. This timely appeal resulted.[3]

On appeal, Mother presents the following issues for our review:

1. Did the trial court abuse its discretion when it ordered [] Child to be vaccinated against Covid-19 when evidence at trial about

_____

[3] On July 17, 2023, Mother filed a notice of appeal and an accompanying concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 8, 2023. Father has not appealed and did not file an appellate brief in response to Mother's submission.

the parties' 2017 vaccination stipulations, [] Child's health and family medical history, and Mother's significant concerns about [] Child receiving the Covid-19 vaccine, all supported one conclusion that it was not in the best interest of [] Child to vaccinate her against Covid-19?

2. Did the trial court abuse its discretion and err as a matter of law when it rejected the uncontradicted expert opinion of Mother's expert, Dr. Mumper, that the Covid-19 vaccination is not in the best interest of [] Child?

3. Did the trial court abuse its discretion or err as a matter of law when it concluded that the CDC's general recommendations about the Covid-19 vaccine outweighed Mother's testimony and Dr. Mumper's expert opinion about the best interest of this child?

4. Did the trial court abuse its discretion and err as a matter of law when it concluded that [] Child should receive the Covid-19 vaccine despite evidence that [] Child's school does not require the vaccine?

Mother's Brief at 6-7 (some capitalization omitted).

Mother's four issues are inter-related, and we will examine them together. Essentially, Mother argues that the trial court abused its discretion by ordering that Child be vaccinated against Covid-19 "when evidence at trial about the parties' 2017 vaccination stipulations, the Child's health and family medical history, and Mother's significant concerns about [] Child receiving the Covid-19 vaccine all supported the conclusion that it was not in the best interest of [] Child[.]" *Id.* at 32 (superfluous capitalization omitted). She asserts that "the parties specifically limited vaccines" Child would receive, and the Covid-19 vaccine is "a brand[-]new vaccine with limited research and has produced significant adverse reactions." *Id.* at 39. Mother opines that "the parties have demonstrated a clear history of protecting [] Child's health by

limiting her exposure to vaccines to only those required for school [and, here, i]t is undisputed that [] Child's school does not require the Covid-19 vaccine." *Id.* at 32-33. Mother relies on an unpublished decision from this Court, *P.M. v. L.M.*, 1637 MDA 2019 (Pa. Super. 2020) to argue that the trial court "failed to defer to Mother's strongly held beliefs, the parties' agreement to limit [] Child's vaccines, Mother's individual and family medical history, and Mother's concerns regarding [] Child receiving certain vaccines, a position Mother has held since [] Child was born." *Id.* at 38. Mother further contends that the trial court abused its discretion "when it rejected the uncontradicted expert opinion of Mother's expert, Dr. Mumper, that the Covid-19 vaccination is not in the best interest of [] Child" when "Father did not present any expert witness, reports, or any other [competing] evidence or testimony[.]" *Id.* at 33. Mother argues that it is an abuse of discretion to "dismiss as unpersuasive, and to totally discount uncontradicted expert testimony." *Id.* at 43, *citing L.L.B v. T.R.B.*, 283 A.3d 859, 865 (Pa. Super. 2022); *M.A.T. v. G.S.T.*, 989 A.2d 11, 12 (Pa. Super. 2010) (*en banc*). Mother suggests that the trial court erred by stating that Dr. Mumper testified that Child is "a healthy child." Mother's Brief at 47. Instead, Mother posits that "Dr. Mumper testified that [] Child is a healthy child with regard to [] risk of death if [] Child were to contract Covid-19" as compared with the risks associated with receiving the vaccine. *Id.* at 47. "In other words, [Child]'s health conditions, such as frequent stomach issues, headaches, blood in her stool, and early pubescence do not impact [] Child's risk of death if she were to contract Covid-19,

however, these same conditions do raise serious risks and concerns if [] Child were to receive the Covid-19 vaccine, as set forth in detail in Dr. Mumper's testimony and report." *Id.* at 48; *see also id.* at 12 ("As an infant, [] Child suffered from Food-Protein-Induced Enterocolitis, a condition triggered by the consumption of eggs and products containing eggs [] which includes certain vaccines" and "Mother wanted to delay [] vaccines until [] Child was over all of the symptoms[.]"). Mother also maintains that it was erroneous for the trial court to rely on "the CDC's general recommendations about the Covid-19 vaccine" as presented by Father because there was no evidence that "the CDC recommendation is appropriate for this [particular c]hild." *Id.* As such, Mother requests that we vacate and reverse the trial court's decision regarding Covid-19 vaccination. *Id.* at 58.

Our standard of review is well-settled:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (internal citations omitted).

Moreover:

[A] broad scope of review should not be construed as providing the reviewing panel with a license to nullify the fact-finding

- 8 -

functions of the court of first instance. As an appellate Court, we are empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but may not interfere with those conclusions unless they are unreasonable in view of the trial court's findings, and, thus, represent a gross abuse of discretion. Custody decisions are to be made on the basis of the child's best interests.

*          *          *

It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion in [making decisions affecting] custody[.]

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (internal citations and quotations omitted).

Generally, when rendering a decision affecting custody, the trial court is required to examine the sixteen factors under 23 Pa.C.S.A. § 5328(a) of the Child Custody Act to determine the best interests of the children, however,

[w]e long have recognized that, when parties share legal custody of a child, they may reach an impasse in making decisions for the child that implicate custody. When that happens, the parties turn to the trial court to decide their impasse. *See*, *e.g.*, *Staub v. Staub*, 960 A.2d 848 (Pa. Super. 2008) (deciding between public and home schooling); *Fox v. Garzilli*, 875 A.2d 1104 (Pa. Super. 2005) (ordering that children would attend school in mother's school district); *Dolan v. Dolan*, 548 A.2d 632 (Pa. Super. 1988) (deciding between public and parochial school). This type of court intervention does not affect the form of custody and hence, the 5328(a) best interest factors do not all have to be considered.

*S.W.D*, 96 A.3d at 404.

"The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the

child's physical, intellectual, moral and spiritual well-being." ***Wheeler v. Mazur***, 793 A.2d 929, 933 (Pa. Super. 2002) (citation omitted). "This determination is to be made on a case-by-case basis." ***Id.*** (citation omitted). "Only where it finds that the custody order is manifestly unreasonable as shown by the evidence of record will an appellate court interfere with the trial court's determination." ***Id.*** (citation, quotations, and original brackets omitted).

Furthermore, regarding expert testimony in child custody cases:

The trial court [is] under no obligation to delegate its decision-making authority to [an expert]. ***See***, ***e.g.***, ***K.W.B. v. E.A.B.***, 698 A.2d 609, 613 (Pa. Super. 1997). It is an abuse of discretion, however, for a trial court to dismiss "as unpersuasive, and to totally discount, uncontradicted expert testimony." ***Murphey*** [***v. Hatala***], 504 A.2d [917,] 922 [(Pa. Super. 1986); ***see also Rinehimer v. Rinehimer***, 485 A.2d 1166, 1169 (Pa. Super. 1984) (while not required to accept their conclusions, "the lower court was obligated to consider the testimony of the two experts."); ***Straub v. Tyahla***, 418 A.2d 472, 476 (Pa. Super. 1980) ("We conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist."). Accordingly, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record. ***See Nomland v. Nomland***, 813 A.2d 850, 854 (Pa. Super. 2002) ("To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts.") (citations and quotation marks omitted).

***M.A.T.***, 989 A.2d at 19–20 (original brackets omitted).

Here, the trial court initially determined that the parties' 2017 vaccination stipulations were not binding because "Covid-19 was not in existence at the time of June 1, 2017 custody order when the parties agreed to the vaccine stipulations" and that pursuant to 23 Pa.C.S.A. § 5338, a party may petition for modification of "a custody order to serve the best interest of the child." Trial Court Opinion, 9/8/2023, at 8. Thereafter, the trial court ultimately concluded:

> [B]oth parties offered testimony and evidence with respect to whether [] Child should be ordered to receive the Covid-19 vaccine. Mother testified that, in her opinion, the Covid-19 vaccine was not in [] Child's best interest. Mother further offered expert testimony from Dr. Mumper who opined that, generally, Child should not be vaccinated for Covid-19.
>
> Father testified that, in his opinion, [] Child should be vaccinated for Covid-19. Father offered documentation from [both] the CDC website setting forth its recommended Covid-19 vaccination schedule including for persons of [] Child's age and from [Child's school,] which recommended, *inter alia*, that students be vaccinated.
>
> The [trial c]ourt ultimately concluded that Father's testimony and evidence were more persuasive and that Father's requested relief was in [] Child's best interest.
>
>       *          *          *
>
> It is true that Mother offered an expert witness to testify to her position regarding the Covid-19 vaccine and Father offered no such expert testimony. It is axiomatic, however, that custodial issues are not determined solely on the basis of whether one side (as opposed to both) offers an expert witness. Moreover, [the trial c]ourt is not bound by the opinion of an expert witness.
>
>       *          *          *
>
> Dr. Mumper testified that she reviewed [] Child's medical records and concluded "for a healthy child like Child[,] her risk based on

- 11 -

the CDC numbers would be about one in [2.5] million deaths." Dr. Mumper's ultimate opinion was that "the risk of the vaccine in my best medical judgment far outweigh the risk that she would face from Covid itself."

On cross-examination, Dr. Mumper testified that she was not licensed to practice medicine in Pennsylvania. Also, of note, she testified that she had not examined nor seen [] Child in person or remotely. Dr. Mumper testified that she was aware of the CDC recommendation that someone of [] Child's age should be vaccinated for Covid-19 but testified [that "she] disagree[d] with that recommendation."

Dr. Mumper acknowledged that her opinion with respect to the Covid-19 vaccination is contradictory to that of CDC, FDA, and the NIH – each of which have recommended Covid-19 vaccinations for children. She opined that these government agencies are "intimately entwined with the pharmaceutical industry" and may be generally biased towards vaccines for financial reasons.

Dr. Mumper also acknowledged that her opinion with respect to the Covid-19 vaccination is contrary to the Mayo Clinic, a non-government entity, which also recommends vaccination for children. Dr. Mumper acknowledged the Mayo Clinic's position and testified [that "she thought] the May Clinic is getting it wrong in regards to children."

The [trial c]ourt carefully considered Dr. Mumper's opinions and testimony with respect to the Covid-19 vaccination for [] Child in reaching its decision. Ultimately, the [trial c]ourt did not find her testimony to be persuasive on this issue and decided not to accept her conclusions.

A trial court must consider, but need not accept, the conclusions of an expert witness in a child custody case. If the trial court rejects the recommendation, its independent decision must be supported by "competent evidence" of record.

There was ample "competent evidence" to support Father's position that it was in [] Child's best interest to follow the CDC guidelines with respect to Covid-19 vaccinations. Father testified to his well-reasoned opinion and offered evidence that the CDC and [] Child's school recommended that children her age receive the vaccination. Dr. Mumper conceded in her testimony that her opinion was contrary to those of the CDC, FDA, NIH, and the Mayo Clinic – which is certainly "competent evidence" of record. The

reality is that both parties produced competent evidence and, after careful consideration of the totality of the record, the [trial c]ourt agreed with the position of Father (corroborated by the positions of the CDC, FDA, NIH, FDA, and the Mayo Clinic).

Tasked with fashioning an appropriate order, the [trial c]ourt determined that since the parents could not otherwise agree on a Covid-19 vaccination protocol for [] Child, it was in [] Child's best interest for the parents to comply with the recommendations of the CDC – the national public health agency of the United States. This decision is supported by the record in this case.

*Id.* at 9-11 (case citations, record citations, and original brackets omitted).

We agree with the trial court's assessment and, upon independent review of the record, note the following. Father testified "[d]espite extensive medical testing to date, there have been no allergies or sensitivities identified" with Child. N.T., 10/26/2022, at 195. He was not "aware of her ever [testing positive] for any allergies or autoimmune disorders[.]" *Id.* Child's "stomach problems [we]re the result of inadequate hydration." *Id.* at 230. Father further testified, unequivocally and without contradiction, that "[t]here's never been an adverse reaction [from Child] to any form of a medical treatment including vaccines." *Id.* at 223. Additionally, Mother has never requested a second opinion for questions pertaining to adverse vaccine reactions, as set forth in the parties' 2017 vaccination stipulations, "[b]ecause there has not been one." *Id.* at 224. Dr. Mumper testified that because Child was born by C-section, had eczema as an infant and toddler, and had "at least one wheezing fit," Dr. Mumper was "concerned that [Child] is [skewed] towards allergy and autoimmunity and skewed away from an immune system which is very robust at treating infection." N.T., 10/27/2022, at 38-39; *id.* at 52. Dr.

Mumper agreed that, in reviewing Child's medical records, Child had no known allergies to the 17 prior vaccines already administered to her. *Id.* at 46-48; *see also id.* at 49 ("[Child] has had Hepatitis B, three vaccines; she's had DTaP, four vaccines; three Polio vaccines; two MMR vaccines; two Varicella vaccines; and two Hepatitis A vaccines."); *see also id.* at 77 (Dr. Mumper agrees Child has never tested positive for any allergies or negativity to vaccines); *see also id.* at 79 (Dr. Mumper was "commenting about [Child's] immune system in infancy" when testifying about Child's eczema, but "did not say [] that [Child] was a sickly child now who had multiple illnesses or some type of immune deficiency."). Mother testified that Child "had what's called Food Protein-Induced Enterocolitis as an infant that was triggered by eggs, and her pediatrician in Las Vegas couldn't tell [] which vaccines had egg in them or not. So [Mother] wait[ed] until [Child] was over all of those symptoms of Food Protein-Induced Enterocolitis which seemed to stop when she was around two [years of age]." N.T., 2/15/2023, at 84-85.

As mentioned, Father presented Covid-19 vaccine guidelines from the CDC. *See* Exhibit F-29. The CDC guidelines recommend that children from six to 12 years of age be vaccinated against Covid-19 "based on age and medical condition and vaccine composition." *Id.* The guidelines delineate specific vaccine doses "for most people" and for "those who are moderately or severely immunocompromised." *Id.* (superfluous capitalization omitted). In this case, as set forth above, there was no evidence presented that Child is moderately or severely immunocompromised, but even if she were, the CDC

- 14 -

recommends that children who are moderately or severely immunocompromised be immunized. The record reveals that Child has no known allergies or autoimmune disorders, her enterocolitis and sensitivity to eggs resolved, she has never had an allergic reaction to previously administered vaccines, and Dr. Mumper generally agreed that Child is healthy overall. As such, the trial court considered the conclusions of Dr. Mumper, but chose not to follow or adopt the expert's recommendations. As the testimony set forth above reveals, the trial court's independent decision was supported by competent evidence of record. Accordingly, we find that the trial court did not abuse its discretion in ordering the parties to vaccinate Child against Covid-19.

Finally, we reject Mother's reliance on this Court's unpublished, non-precedential decision in **P.M.** In **P.M.**, the trial court granted the mother in that matter sole legal custody and she did not want to have her children vaccinated "due to her belief that her first child's death was vaccine-related." **See P.M. supra** at *22. However, in that case, the "[m]other introduced evidence that [the f]ather did not object to the [c]hildren remaining unvaccinated prior to the parties' separation and that he was using this issue as a threat in an attempt to coerce [] settle[ment of] the custody issues" and, furthermore, that the father admitted that "if custody issues were settled, no one had to be vaccinated." **Id.** (record citation omitted). Ultimately, the **P.M.** "[C]ourt left open the option to order vaccination in the future." **Id.** at *23. The unpublished decision in **P.M.** is not controlling, but also

distinguishable. In **P.M.**, the mother was granted sole legal custody of the parties' children; whereas, in this case, Mother and Father have shared legal custody, do not agree about vaccinating Child for Covid-19, and, therefore, turned to the trial court to decide their impasse. Moreover, there is also no evidence in this appeal which suggests that Child had adverse reactions to previous vaccinations. Accordingly, Mother's reliance on **P.M.** is unavailing. For all of the foregoing reasons, Mother is not entitled to relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2024